WILLIAM P. ABENDROTH, Respondent, v. THE MANHATTAN
RAILWAY COMPANY et al., Appellants.

An owner of a lot adjoining a city street, although his title extends only
to the side of the street, and he has no interest therein save as abutting
owner, has incorporeal private rights therein, which are incident to his
property, and which may be so impaired as to entitle him to damages.

Such rights are private property within the provision of the State Consti-
tution (Art. 1, § 6), which forbids the taking of private property for
public use, without just compensation; it is no justification, therefore,
for the impairment, that the act complained of was done pursuant to
legislative authority.

In an action brought by such an owner to restrain defendant from
maintaining and operating an elevated railroad in a street in front
of plaintiff's premises, and for damages sustained, the court found
that the railroad structure did not interfere with the air of plain-
tiff's building or with access thereto in any substantial degree, but
that said structure fills a large portion of the street, seriously impairs
his light, and that the smoke, gas, steam and cinders, emitted from
the engines, enter plaintiff's doors and windows and cause him injury;
that by reason of said facts, the rental value of plaintiff's premises
has been seriously diminished, and his property has been and is per-
manently damaged, and its value lessened. *Held*, that the erection

and operation of said elevated road was a material impairment of plaintiff's right of property, for which he was entitled to recover compensation; also that the fact the road was constructed pursuant to legislative authority was not a defense.

*Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505), distinguished.

Also *held*, the question was immaterial as to whether the island of Manhattan was so discovered, settled or possessed by the United Provinces as to impress upon it what is claimed to be the general rule of the civil law, *i. e.*, that the title to the soil of highways is in the government. This action was brought five years after the construction of the road; plaintiff had occasionally been a fare-paying passenger thereon. It appeared that when the road was being built, plaintiff forbade the railroad corporation from constructing it and threatened litigation. *Held*, that while the delay in bringing suit might have been entitled to consideration in an action brought solely in equity to compel the removal of the road, in an action for damages it was no defense.

Reported below, 22 J. & S. 417.

(Argued January 20, 1890; decided October 7, 1890.)

APPEAL from order of the General Term of the Superior Court of the city of New York, made May 12, 1887, which reversed a judgment of the Special Term dismissing the complaint on the merits and which granted a new trial.

This action was brought in November, 1883, to recover damages to plaintiff's property on Pearl street in the city of New York, alleged to have been caused by the erection and operation by defendants of an elevated railroad in said street; also to restrain the defendants from maintaining or operating the road, and to compel them to remove it.

When the inhabitants of the island of Manhattan were governed by the United Provinces a public highway was opened pursuant to the laws then and there existing, which way, so far as it appears, had no name, but was a country road, and so remained until the authority of the British government was established on said island. After New York became a British colony, the highway was called Queen street, and when it became a state, the way was known as Pearl street, by which name it is now designated. In front of the plaintiff's premises the street is forty-one feet wide between the

house lines, but whether its exterior lines at and near this point coincide with those of Queen street and of the ancient highway does not appear. Since January 2, 1865, the plaintiff has been the owner, in fee and in possession, of a lot on the south side of this street which is about twenty feet wide, and about ninety feet deep, on which a brick building has stood for more than fifty years, and is known as number 280. There is no other street or public way by which this lot can be reached.

In 1871 the New York Elevated Railroad Company was incorporated under the General Railroad Law of this state, and in 1875 the Manhattan Railway Company was incorporated pursuant to chapter 606 of the Laws of 1875. During the winter of 1877 and 1878 the first-mentioned corporation built an elevated railroad in this street and in front of the plaintiff's lot; which road, in August, 1878, opened for business and was operated by that corporation until May 20, 1879, since which it has been operated by the Manhattan Elevated Railroad Company under a lease from its owner. The railroad, and its relation to the plaintiff's property, is described in the findings of fact (which description is not questioned) as follows : " Pearl street, in front of plaintiff's said premises, is forty-one feet wide between the house lines ; and the side-walk is from nine feet eight inches to nine feet eleven inches wide. The elevated railroad structure, erected as aforesaid in front of these premises, consisted of a double row of hollow-latticed iron columns, set about opposite each other in the edges of the sidewalk, on each side of the street, at intervals along the street of about forty feet, each column being fifteen inches square, standing on an iron plate about eighteen inches square, supported by a foundation of stone, brick, etc., beneath the surface of the ground, about eight feet deep, and six feet square, and said pairs of columns being connected, at a height of about sixteen feet above the street, with open-work iron cross girders, about twenty-two feet six inches long, three feet deep, and one foot wide on top, upon which, along the street, were placed four open-work iron longitudinal girders, about three

and one-half feet deep and one foot wide on top, on which were laid, at a height of about twenty-two feet above the street, two railway tracks, consisting of iron rails placed upon wooden ties or sleepers, said rails being laid in parallel lines about four feet eight and one-half inches apart, and· said sleepers being about eight feet long, and eight inches wide, and six inches thick, and placed with open intervals, from sleeper to sleeper, of sixteen inches; the said tracks were laid seven feet three and one-half inches from each other, and just outside each iron rail was placed a wooden guard-rail, parallel with the rails; said guard-rails being about eight inches high and six inches wide. Between the tracks is a narrow plank walk-way. The said upper structure was made of open iron-work with cross braces.

" The building on plaintiff's said premises was erected upwards of fifty years ago. It is a·brick building, four stories high, twenty feet wide, about sixty feet deep, and measuring forty-three feet two inches in height from the sidewalk to the cornice line.. The nearest rail of the elevated railroad is ten feet and six inches from the face of said building; the nearest portion of the upper structure of said railroad is about seven feet six inches from the face of said building. The level of the tracks is a little above the second-story windows. One of said iron columns stands in the edge of the sidewalk, opposite the westerly wall of plaintiff's said building, so that the westerly line of plaintiff's said premises prolonged into the street would intersect the same, and leave about ten inches of .the width of said column east of said line ; and the space between the south face of said column and the face of plaintiff's said building at the nearest point is eight feet." Neither defendant has acquired, or taken any steps to acquire, by agreement, or by condemnation, the right from the plaintiff to build, maintain or operate the railroad.

The defendants, by their answers, deny that they have taken or impaired any of the rights of the plaintiff, and allege that he has acquiesced for five years in the construction and operation of the railroad.

The trial court found as facts the following : " The said railroad structure does not interfere with the air of plaintiff's building or with access thereto, in any substantial degree." " That said structure is permanent, has and does fill a large portion of the space of said street in front of plaintiff's said premises and seriously impairs his light ; that said engines (those drawing the trains) omit smoke, gas, steam and cinders which, at times, have and do enter the plaintiff's premises through his doors and windows, and causes him injury ; that by reason of the facts aforesaid, the rental value of the plaintiff's premises has been seriously diminished  *  *  *  and his property has been, and is permanently damaged and its value lessened." " That plaintiff's north line is the south side line of . Pearl street."

*Edward C. James* and *Julien T. Davies* for appellants. The exceptions to the findings of fact and refusals to find are not available for any purpose. In the absence of a case containing the evidence, neither this court nor the General Term can say that a fact found was not proven, or that a fact which the court refused to find was proven. (*Ferguson* v. *Hamilton*, 35 Barb. 427 ; *Douglas* v. *Douglas*, 11 Hun, 406 ; *Tomlinson* v. *Mayor*, etc., 44 N. Y. 601, 605 ; *Phillip* v. *Gallant*, 62 id. 256, 265 ; *Comstock* v. *Ames*, 3 Keyes, 357, 360 ; *Thompson* v. *Bank*, 82 N. Y. 1 ; *Burnap* v. *Bank*, 96 id. 125, 131 ; *Ins. Co.* v. *Barnard*, 96 id. 525, 529 ; *Stoddard* v. *Whiting*, 46 id. 627.) Plaintiff's right of action depends upon whether or not he owns any property, private rights or easements in Pearl street or the soil thereof. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 143 ; *Uline* v. *M. E. R. Co.*, 101 id. 106 ; *Williams* v. *N. Y. C. R. R. Co.*, 16 id. 97 ; *Mahon* v. *N. Y. C. R. R. Co.*, 24 id. 658 ; *Plate* v. *N. Y. C. R. R. Co.*, 37 id. 472 ; *Henderson* v. *N. Y. C. R. R. Co.*, 78 id. 423 ; *Mahady* v. *B. R. R. Co.*, 91 id. 148 ; *Radcliff* v. *Mayor*, etc., 4 id. 195 ; *Davis* v. *Mayor*, etc., 14 id. 506 ; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id. 42 ; *Kellinger* v. *F. S. S. R. R. Co.*, 50 id. 206 ; *Lahr* v. *M. E. R. Co.*, 104 id. 268 ; *Drucker*

v. *M. E. R. Co.*, 106 id. 157; *Pond Case*, 112 id. 186.) No
private easement or property right attaches to any lot abutting
on the street, nor is any property right in the street, constitut-
ing private property, vested in any individual owner. (*Hey-
ward* v. *Mayor, etc.*, 7 N. Y. 314; *B. P. Comrs.* v. *Armstrong*,
45 id. 234; *K. C. F. I. Co.* v. *Stevens*, 101 id. 411; *City of
Brooklyn* v. *Copeland*, 106 id. 496, 501; *W. Cemetery* v. *R.
R. Co.*, 68 id. 591, 598; *Dunham* v. *Williams*, 37 id. 251;
*People* v. *F. Co.*, 68 id. 71, 78; *Mayor, etc.*, v. *Hart*, 95 id. 443,
458; *Mayor, etc.*, v. *Hopkins*, 13 La. 326; *Dermott* v. *State*,
99 N. Y. 101, 107; *Gould* v. *H. R. R. R. Co.*, 6 id. 522;
*Lansing* v. *Smith*, 8 Cow. 146; *G. Co.* v. *Calkins*, 62 N. Y.
308; *Pearsall* v. *Post*, 20 Wend. 126; 2 R. L. of 1813, 414;
*Lahr* v. *M. E. R. Co.*, 104 N. Y. 268; *Pesser* v. *M. E. R.
Co.*, 12 Daly, 76.) Plaintiff has no private property or prop-
erty rights in Pearl street. (*Ins. Co.* v. *Barnard*, 96 N. Y.
525.) Private rights in public property cannot be acquired
by implication, for no intendment can be made against a state,
or municipality, to divest it of its estate. This is especially
the case where the claim to private property relates to what is
known as the *jus publici*, or the rights which the sovereign
holds in trust for the public use, such as the supervision of
public highways and the control of navigable rivers. (*Der-
mott* v. *State*, 99 N. Y. 101, 107; *Langdon* v. *Mayor, etc.*, 93
id. 641; *People* v. *N. Y., etc., F. Co.*, 68 id. 71; *C. R. Bridge*
v. *W. Bridge*, 14 Pet. 544; *Smith* v. *Lansing*, 4 Wend. 28;
1 Hoffman's Treatise [2d ed.], 311, 312.) It is well settled
that no one can acquire private property, or rights, by pre-
scription in a public highway; the use in such cases raises no
presumption of a grant. (*Wheeler* v. *Clark*, 58 N. Y. 270;
*Burbank* v. *Fay*, 65 id. 65; *Gould* v. *H. R. R. R. Co.*, 6 id.
541; *Dunham* v. *Williams*, 37 id. 251; *B. P. Comrs.*
v. *Armstrong*, 45 id. 234; *W. Cemetery* v. *R. R. Co.*, 68
id. 591, 592; *K. C. F. I. Co.* v. *Stevens*, 101 id. 411; *Lahr*
v. *M. E. R. Co.*, 104 id. 288; *Mahady* v. *B. R. R. Co.*, 91
N. Y. 152; 92 id. 482, 483; 37 id. 253, 254; 1 Hoffman's
Treatise [2d ed.], 311, 312, 330; 1 Greenl. on Ev. 31; 3 id.

54; *Mayor, etc.,* v. *Hart,* 95 N. Y. 443, 458; *Dermott* v.. *State,* 99 id. 101, 107; *People* v. *Newton,* 112 id. 396, 399; *Landon* v. *Mayor, etc.,* 93 id. 129; *Bedlow* v. *Dry Dock Co.,* 112 id. 263, 280; *B. P. Comrs.* v. *Armstrong,* 45 id. 234; *City of Brooklyn* v. *Copeland,* 106 id. 502; *Burbank* v. *Fay,* 65 id. 65; *Smith* v. *City of Rochester,* 92 id. 463.) The decision of the General Term, reversing this judgment upon the ground that it was immaterial, for the purpose of this case, whether the plaintiff has, or has not, any interest in the fee of Pearl street in front of and adjacent to his premises, or any easement in the street; that the plaintiff is entitled to maintain this action, because smoke, gas, steam and cinders from the engines on the railroad at times enter the doors and windows of plaintiff's premises and cause him injury; that an action lies for this injury, although it results from the due use and operation of the railroad upon the route and in the manner intended by the legislature, and not from negligence or want of care and skill on the part of defendants, was error. (*Uline* v. *M. E. R. Co.,* 101 N. Y. 98, 107; *Radcliffe* v. *Mayor, etc.,* 4 id. 195; *Davis* v. *Mayor, etc.,* 14 id. 506; *Rex* v. *Pease,* 4 B. & Ad. 30; *Vaughan* v. *T. V. R. Co.,* 5 H. & N. 679; *H. R. Co.* v. *Brand,* 4 H. of L. Cas. 171; *Collins* v. *R. R. Co.,* 5 Hun, 503; 71 N. Y. 609; *Searls* v. *M. R. Co.,* 101 id. 661; Laws of 1875, chap. 606, §§ 1, 4, 26; Laws of 1867, chap. 489; Laws of 1868, chap. 855; Laws of 1875, chap. 595; *In re N. Y. E. R. Co.,* 70 N. Y. 326; *Isaacson* v. *R. R. Co.,* 94 id. 278, 284; *Slater* v. *Jewett,* 85 id. 61; *Bank* v. *Hall,* 83 id. 338; *Yerkes* v. *Bank,* 69 id. 383; *E., etc., Co.* v. *Avery,* 83 id. 31; *Howard* v. *Moot,* 64 id. 262; *King* v. *Gallun,* 109 U. S. 99; *Denver* v. *Bayer,* 7 Col. 113; *Gottschulte* v. *R. R. Co.,* 14 Neb. 550.) A plaintiff seeking the aid of a court of equity, by injunction, must not be guilty of *laches,* or delay, in the assertion of his rights; for while delay alone may not amount to proof of acquiescence in the wrong for which he seeks redress, it may yet suffice to prevent relief by injunction, and will do so, if the defendant has been in the meantime prosecuting the

work at large expense in the sight or with the knowledge of the plaintiff. And where, in addition to these facts, there is proof of actual acquiescence, and especially where there is proof of affirmative participation, either in the prosecution of the work, or in the use of it when completed, no equitable relief will be granted, by injunction or otherwise. (Pom. Eq. Juris. § 817; High on Injun. §§ 7, 10, 618, 643, 731, 756, 797, 837, 884, 885, 926, 1278; *N. A. R. R. Co.* v. *N. Y. E. R. R. Co.*, 3 Abb. [N. C.] 358, 368, 369; *Hentz* v. *L. I. R. R. Co.*, 13 Barb. 655; *Goodin* v. *C. R. Co.*, 18 Ohio St. 169; *F. F. & B. Co.* v. *Dodge County*, 6 Neb. 18; *B. & O. R. Co.* v. *Strauss*, 37 Md. 237; *E. R. Co.* v. *D. R. Co.*, 6 C. E. Green, 283; *Atty.-Genl.* v. *N. Y., etc., R. Co.*, 9 id. 49, 56, 58; *Pickert* v. *R. P. R. Co.*, 10 id. 316; *Atty.-Genl.* v. *D. & B. B. R. Co.*, 12 id. 1; *Varney* v. *Pope*, 60 Me. 192; *B. C. Co.* v. *Lloyd*, 18 Ves. 515; *Wood* v. *Sutliffe*, 2 Simons, 163; *R. C. Co.* v. *King*, id. 78; 2 Wood's Railroad Law, 792; *Duke of Leeds* v. *Duke of Amherst*, 2 Phil. Ch. 117, 123; *McAulay* v. *W. V. R. R. Co.*, 33 Vt. 321; *Kittle* v. *M. R. Co.*, 56 id. 109; *M. R. Co.* v. *Smith*, 113 Ind. 233; *U. S.* v. *G. F. M. Co.*, 112 U. S. 645, 656; *Harlow* v. *R. R. Co.*, 41 Mich. 336; *Pettibone* v. *R. R. Co.*, 14 Wis. 443; *Nicholson* v. *R. R. Co.*, 22 Conn. 74; *Bradley* v. *Aldrich*, 40 N. Y. 504; *Stevens* v. *Mayor, etc.*, 84 id. 296.)

*Charles P. Cowles* and *Justus A. B. Cowles* for respondent. All public streets in the city of New York are held by the city in trust for the public and the owners of land abutting thereon. In consequence of the tenure by which the city holds the streets, and of necessity, the owners of land abutting on such streets own easements in the streets of light, air and access which are appurtenant to, and form an integral part of the abutting property. (1 Greenl. on Ev. 31, § 14; Laws of 1873, chap. 42; 3 Greenl. on Ev. 52; *N. Y. E. Bank* v. *M. E. R. Co.*, 108 N. Y. 660; Laws of 1813, chap. 186; *Lahr* v. *M. E. R. Co.*, 104 N. Y. 268; *Story* v. *N. Y. E. R. Co.*, 90 id. 122, 157; *People* v. *Newton*, 112 id. 405; *Dunham* v.

*Williams*, 37 id. 251.) By the dedication of a street as a public street the legislature and the municipality relinquished all special rights, if any such ever existed, and are estopped from asserting the absolute control of such street. (*Curnen* v. *Mayor, etc.*, 79 N. Y. 511, 514.) The payment of assessments levied for the maintenance and improvement of a public street imposes a trust· upon the municipality that such streets shall be used for no purposes inconsistent with the use of the same as a public street, and gives to the abutting owner certain rights in the street. (*Hassan* v. *City of Rochester*, 67 N. Y. 520, 533; *Lahr* v. *M. E. R. Co.*, 104 id. 268, 290; *Carter* v. *N. Y. E. R. Co.*, 14 N. Y. S. R. 859.) Private rights appurtenant to land abutting upon any public street are necessarily implied in the existence of such streets. (N. Y. Const. art. 1, § 6; 1 Black. Com. 138; 2 Kent's Comm. 320, 326; *City of Denver* v. *Bayer*, 7 Col. 113; *Story* v. *N. Y. E. R. Co.*, 90 N. Y. 122, 179; *Mahady* v. *B. R. R. Co.*, 91 id. 148, 153; *Lahr* v. *M. E. R. Co.*, 104 id. 268, 291; *Hussner* v. *B. C. R. R. Co.*, 114 id. 433, 437; *In re N. Y. E. R. R. Co.*, 70 id. 327, 354, 360.) The construction, maintenance and operation of the elevated railroad in Pearl street imposed upon the plaintiff's premises a new and additional burden, and created, as to the plaintiff, a private nuisance. (*B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317; *Cogswell* v. *N. Y., N. H. & H. R. Co.*, 103 N. Y. 10; *Gardner* v. *Trustees, etc.*, 2 Johns. Ch. 162; *In re N. Y. E. R. R. Co.*, 70 N. Y. 327, 354, 360; *Lahr* v. *M. E. R. Co.*, 104 id. 293.) The occupation and use of the property of an individual by a railroad corporation is a wrongful act, and constitutes in the operation of the road a continuing nuisance which no lapse of time will justify. A court of equity at any time will interpose and will grant relief. (*Corning* v. *T. I. & N. Factory*, 40 N. Y. 191, 206; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98, 106, 116, 123; *Pond* v. *M. E. R. Co.*, 112 id. 186; *Shepard* v. *M. R. Co.*, 27 N. Y. S. R. 705, 708.) The order and judgment of the General Term should be affirmed, and judgment absolute be directed against the defendants. The

direction should grant to the plaintiff the judgment demanded in the complaint. (Code Civ. Pro. § 191, subd. 1; *Godfrey* v. *Moser*, 66 N. Y. 250, 253; *Hiscock* v. *Harris*, 80 id. 402.)

*Wm. H. Arnoux* for Charles S. Hine and others. England acquired title to Manhattan island by right of original discovery, *i. e.*, by the voyages and discoveries of John and Sebastian Cabot in 1497 and 1498, perfected by taking possession and continued by assertion of ownership. (*Johnson* v. *McIntosh*, 8 Wheat. 543; *Worcester.* v. *State of Georgia*, 6 Pet. 549.) Holland acquired no title, therefore, by the discovery of Hudson, and had none until it acquired it by conquest in 1673, and this, by the treaty of Westminster, was transferred in 1674 to the king of Great Britain. The Dutch West India Company acquired no title by purchase from the Indians, as the latter had no title which they could grant. (*Martin* v. *Waddell*, 16 Pet. 367; *Town of Southampton* v. *M. B. Oyster Co.*, 116 N. Y. 7.) As England acquired title by discovery, not by conquest, the common law, not the civil law, became the fundamental law of the province. (*Canal Company* v. *People*, 5 Wend. 445; *Mortimer* v. *N. Y. E. R. R. Co.*, 6 N. Y. Supp. 898.) The court will take judicial notice of the facts as to title established by history. (*Hunter* v. *N. Y., O. & W. R. R. Co.*, 116 N. Y. 615.)

*G. Willett Van West* for James P. Kernochan and others. The plaintiff, as abutting owner, has an interest in the street which entitles him to compensation. (*Story* v. *N. Y. E. R. Co.*, 90 N. Y. 149; *Lahr* v. *M. E. R. Co.*, 104 id. 287; *Pond* v. *M. E. R. Co.*, 112 id. 188; *Hussner* v. *B. E. R. Co.*, 114 id. 437; *Mahady* v. *Bushwick R. R. Co.*, 91 id. 153; *Kane* v. *N. Y. E. R. Co.*, 25 N. Y. S. R. 587; *Mortimer* v. *N. Y. E. R. Co.*, 6 N. Y. Supp. 898; *Hine* v. *N. Y. E. R. Co.*, 7 id. 464; *Jewett* v. *U. E. R. Co.*, 15 N. Y. S. R. 878; *Methodist Church* v. *Brooklyn*, 46 Hun, 532; *Milburn* v. *Foster*, 27 id. 568; *Caro* v. *M. E. R. Co.*, 14 J. & S. 165.) There was no question at the time of the decision of the *Story* case that

abutting owners had some interests in the streets, and that whenever they suffered special damage different from what owners on other streets suffered, they had a right of action. (*Callanan* v. *Gilman*, 107 N. Y. 365 ;. *Cohen* v. *Mayor, etc.*, 113 id. 352.) Similar easements have been held to be protected by the Constitution. (*Langdon* v. *Mayor, etc.*, 93 N. Y. 129; *In re E. Ave.*, 81 id. 436; *Sixth Ave.* v. *Kerr*, 72 id. 330 ; *Briesen* v. *L. I. R. R. Co.*, 31 Hun, 112 ; 103 N. Y. 645 ; *Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, Id. 10 ; *Lahr* v. *M. E. R. Co.*, 104 id. 293 ; *B. & P. R. R. Co.* v. *F. B. Church*, 108 U. S. 317.) An easement is created as to streets in the city of New York by the Dongan charter and the act of March 7, 1793. (*N. Y. N. E. Bank* v. *M. E. R. Co.*, 21 J. & S. 501; 108 N. Y. 660 ; *Lahr* v. *M. E. R. Co.*, 104 id. 268; *Story* v. *N. Y. E. R. Co.*, 90 id. 144 ; *City* v. *Oswego*, 6 id. 625; *Livingston* v. *Mayor, etc.*, 8 Wend. 99 ; *Wiggins* v. *Cleary*, 49 N. Y. 348 ; *Cox* v. *James*, 45 id. 559 ; *Taylor* v. *Hopper*, 62 id. 649 ; *In re E. Ave.*, 81 id. 446 ; *Coe* v. *Bearup*, 14 W. D. 256.) The plaintiff is clearly entitled to an injunction as to the smoke, cinders, etc. (*Cogswell* v. *N. Y., N. H. & H. R. R. Co.*, 103 N. Y. 10 ; *Brieson* v. *L. I. R. R. Co.*, Id. 645 ; 2 Bliss' Code Notes, 100, 183.) It is immaterial who owns the soil of the highway. (*City of Denver* v. *Bayer*, 7 Col. 113 ; *Omaha* v. *Rogers*, 16 Neb. 117 ; *Spencer* v. *Point Pleasant*, 23 W. Va. 407 ; *Barney* v. *Keokuk*, 94 U. S. 324, 342; *Street R.* v. *Cumminsville*, 14 Ohio St. 541; Cooley on Const. Lim. 556; 74 Ind. 29 ; 47 Mich. 393 ; 29 Minn. 45 ; 24 N. J. L. 592 ; 58 Ohio, 41 ; 7 Atl. Rep. 146 ; 32 Am. & Eng. R. Cas. 251–256.)

FOLLETT, Ch. J.    The principal questions involved in this appeal are :  (1) Has the plaintiff, by his ownership of a lot abutting on Pearl street, private rights or rights of property therein ?  (2) Have the defendants taken or materially impaired those rights, if any the plaintiff has, within the meaning of the Constitution ?  The term " abutting owner " will be used in this judgment to denote a person having land bounded on

the side of a public street and having no title or estate in its bed or soil, and no interests or private rights in the street except such as are incident to lots so situated. The evidence upon which the facts were found not appearing in the record, the findings of the trial court must be accepted as true. In addition to the finding that the plaintiff's lot does not extend beyond the line of the street, it should be noted that there is no finding that the plaintiff or any one of his predecessors ever had any title to or estate in the land whereon this street is maintained, or any interest in the street except that of an abutting owner. The view taken of the rights of abutting owners renders it unnecessary to consider the much debated and interesting historical question as to whether the island of Manhattan was, within the law of nations, so discovered, settled, subjugated or possessed by the United Provinces as to impress upon it and its inhabitants the law of that country and the general rule of the civil law, that the title to the soil of highways and the beds of public streets is in the government. If the plaintiff, by virtue of being an abutting owner, has not sufficient private rights or interests in this street to have enabled him to have maintained an action for the injuries found to have been inflicted, or for similar injuries inflicted without legislative authority, then he is without remedy in this case. In the cases about to be referred to, the plaintiffs were not all abutting owners, but none of them owned the part of the street whereon the obstruction or encroachment was placed which was the cause of the injury complained of. In *Corning* v. *Lowerre* (6 Johns. Ch. 439) the owner of a lot on Vestry street was held entitled to maintain an action to restrain the defendant from obstructing the street. In *Van Brunt* v. *Ahearn* (13 Hun, 388) the parties owned lots on Catharine street in Brooklyn. The defendant obstructed the street at a point some distance from the plaintiff's lot, causing him special damages, and it was held that the plaintiff had such a private right, the right of free ingress and egress, that he could maintain an action to recover his damages and restrain the continuance of the obstruction.

In *Crooke* v. *Anderson* (23 Hun, 266) the parties owned lots on Washington avenue in the city of Brooklyn, and the defendant encroached (not obstructed) on that part of the street which was in front of his lot, so that the street was less convenient for the plaintiff's use in going to and from his lot, thus specially damaging the plaintiff, and it was held that he could maintain an action to abate the encroachment.

In *Fanning* v. *Osborne* (34 Hun, 121; 102 N. Y. 441) the plaintiff was an abutting owner on Garden street in the city of Auburn, and the defendant, without legislative authority, maintained a railroad track in the street, over which cars were drawn by the power of steam. It was held that the plaintiff (he showing that he had sustained special damages) had a sufficient private right in the street to maintain an action to restrain the operation of the railroad. The same doctrine was held in *Hussner* v. *B. C. R. R. Co.* (114 N. Y. 433).

In *Callanan* v. *Gilman* (107 N. Y. 360) two abutting owners on Vesey street in the city of New York were engaged in business in adjoining stores. It was held that the plaintiff could, by action, restrain the defendant from improperly obstructing the sidewalk by using a temporary bridge or plankway by which goods were taken from and into the store, and thus causing a special injury or damage to the plaintiff.

In *Stetson* v. *Faxon* (19 Pick. 147) the parties owned adjoining lots in the city of Boston, which were bounded north by Ann street and south by a street running along the north side of Market square. The city laid out a new street south of the last mentioned one, and sold to the defendant the land between his lot and the new street, which had formed a part of the old street. The defendant erected fences and buildings on the land so purchased which impaired the value of the plaintiff's property by rendering it less convenient of access and obscuring the view. In an action to recover damages it was held that the old street not having been legally discontinued, the defendant was liable. The principle running through these cases has been maintained in England for at least 200 years. (*Maynell* v. *Saltmarsh*, 1 Keb.

847; *Fritz* v. *Hobson*, L. R. [14 Ch. Div.] 542.) The same rule has been held applicable to country highways (*Pierce* v. *Dart*, 7 Cow. 609; *Hood* v. *Smith*, 5 Wkly. Dig. 117), and has received the sanction of the courts of most of the states of the union. (Angell on Highways, § 285.) These cases do not rest on the fact that the wrongs happened to amount to public nuisances, for no person can maintain a private action for the recovery of damages against the creator or maintainer of a public nuisance unless it occasions him special damages by an immediate injury to his person or property, or by a consequential injury to his property. (*Lansing* v. *Smith*, 8 Cow. 146; 4 Wend. 10; Wood on Nuis. 655.) All of these cases were for the recovery of consequential damages to real property bounded by the side or center of the street, or for the recovery of such damages sustained by occupants of such property, and in none of the cases were the obstructions or encroachments on or opposite to the property of the plaintiff. There are important differences between the case at bar and those cited. In the cases referred to, the acts which were held to be actionable wholly or partly obstructed the streets and rendered the property of the plaintiffs less accessible, and none of them were done pursuant to legislative authority; while in the case at bar the acts complained of were done pursuant to such authority, and do not, as found by the court, impair in any substantial degree the accessibility of the plaintiff's premises. But these cases do establish the principle that the owner of a lot on a public street, whether it extends across to the center, or only to the side of the street, has incorporeal private rights therein which are incident to his property which may be so impaired as to entitle him to damages. If this be not so, it is difficult to see how he can maintain any action except such as can be maintained by a stranger for an immediate injury to person or property caused by an obstruction while lawfully traveling in the street. The judgments in *Story* v. *N. Y. E. R. R. Co.* (90 N. Y. 122); *Lahr* v. *M. E. R. Co.* (104 id. 268) seem to compel this conclusion. In *Story's* case import-

ance was given to the language of a covenant contained in the grants dividing and conveying the lots forming a larger tract owned and granted by the city (of which Story's lot was a part), and to chapter 86 of the Revised Laws of 1813, under which the street was laid out. But the judgment in *Lahr's* case was not placed on the ground that any rights in or to the bed of the street had been granted or reserved to him, or to any of his predecessors; and it was held, some force being given to the act of 1813, that he had rights of property in the street.

The learned judges who delivered the dissenting opinions in *Story's* case did not deny, but rather assumed that the abutting owner had rights of property in the street, and held that those of the public were paramount, that the rights of both arose and existed by virtue of the same authority, and that those of the abutting owner could, by legislative and municipal action, be further subordinated to the rights of the public for the purpose of affording additional and necessary facilities for the transportation of persons and property through the street. Since *Story's* case was decided, questions akin to the one under consideration have been discussed by the Court of Appeals. In *Mahady's* case (91 N. Y. 153), ANDREWS, J., in delivering the opinion of the court, said: "The plaintiff, though an abutting owner simply, the fee of the street being in the city, was entitled to the use of the street, and neither the legislature nor the city could devote it to purposes inconsistent with street uses, without compensation, according to the principle of *Story* v. *N. Y. E. R. R. Co.* (90 N. Y. 122)." Again, the same learned judge, in delivering the opinion in *Pond's* case (112 N. Y. 188), said: "The *Story* case (90 N. Y. 122), established the principle that an abutting owner on streets in the city of New York possesses, as incident to such ownership, easements of light, air and access in and from the adjacent streets, for the benefit of his abutting lands, and that the appurtenant easements and outlying rights constitute private property of which he cannot be deprived without compensation."

In *Powers* v. *M. R. Co.* (120 N. Y. 178), BROWN, J., in his opinion, said : " The facts of the *Story* case were not broad enough to necessarily cover the case of an abutting owner whose only property in the street was an easement for light, air and access, and hence the right of such owners to maintain actions for damages was not finally set at rest until the decision in *Lahr* v. *M. E. R. Co.*" The cases last cited did not, perhaps, involve the question discussed in the remarks quoted ; but it cannot be assumed that they were made without deliberation, for since *Story's* case this precise question has been much debat^d and hardly out of the minds of the judges of the court of last resort.

The judgments for damages which have been recovered and sustained against the elevated roads do not and cannot rest on the ground that the roads are public nuisances, for they were constructed pursuant to statutes ; and besides, as before stated, a public nuisance does not create a private cause of action, unless a private right exists and is specially injured by it. The only remaining ground upon which they can, and do stand, is that by the common law the plaintiffs had private rights in the streets before the roads were built or authorized to be built. It is clear, we think, that these rights were not created by the statutes under which the corporations were organized, nor by the construction of the roads ; nor do they exist by force of the judgment in *Story's* case ; but they existed anterior to the construction of the roads, and have simply been defined and protected by the decisions made in the litigations against these corporations.

It being established that an abutting owner has property rights in the streets and that an action could have been maintained against the defendants for the recovery of the damages caused by their acts, had they been done without legislative authority, it becomes material to inquire whether such right of action is cut off because the road was constructed pursuant to such authority.

The Constitution of this state provides: " Nor shall private property be taken for public use without just compensation." (Art. 1, § 6.)

It is settled by *Story's* case and *Lahr's* case that such rights as the plaintiff has in Pearl street "are private property" within the meaning of the constitutional provision quoted; and these cases also hold that by the construction and operation of an elevated road in the street in front of an owner's premises, his rights are "taken for public use," within the meaning of the Constitution. It follows that the authority conferred by the legislature to construct the road is not a defense to the action.

*Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505) does not decide that an abutting owner has not vested rights to light, air and access in a public street, which are incident to his lot and which are private property, within the meaning of the Constitution; but that the operation, pursuant to legislative authority, by the defendant of its steam railroad on the grade of the street which was at about the natural surface of the ground, was not on actionable invasion of the abutter's right. The learned judge who wrote the opinion in that case, thus defined the limits of the question to be discussed: "It (defendant) admits that plaintiff had an easement in that street, but it denies that it has occupied or appropriated it. Whether it has taken any portion of the plaintiff's easement in the street in question, is what the defendant asks shall be decided by us, and it denies *in toto* any taking whatever of the plaintiff's property or any portion thereof."

The conclusion which we arrive at is, that the erection and operation of the elevated road in Pearl street immediately in front of the plaintiff's premises in the manner and with the effect described in the findings of fact, was a material impairment of the plaintiff's right of property, for which he is entitled to recover compensation for the damages inflicted.

It is urged that if the plaintiff ever had a right of action, it has been lost by his acquiescence in the construction and use of the road by defendant. It is found that when the road was being built through this street the plaintiff forbade the New York Elevated Railroad Company to construct it, and threatened that corporation with litigation, but began no action until

this suit was commenced, and in the meantime he has occasionally been a fare-paying passenger on the road. Had this action been brought in equity solely for the purpose of compelling the defendants to remove their structure, and if all persons having such interests in the elevated road as would entitle them to be heard before such relief could be granted, were parties to the action, personally, or representatively, this question might require some consideration; but in an action for the recovery of damages, the conduct of the plaintiff, as found by the court, and his delay in bringing the action, is not a defense.

The order should be affirmed and judgment absolute rendered against the appellants, with costs.

All concur.

Order affirmed and judgment accordingly.