FREDERIKA EGERER, Appellant, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Respondent.

The owners of lots abutting on a city street have, although the fee thereof is in the municipality, certain rights and privileges therein, in the nature of easements, which constitute property, and of which they may not be deprived without just compensation. (State Const. art. 1, § 6.)

While, therefore, the legislature may direct the closing of a street and may empower the municipality to discontinue its use as such, this power is subject to the constitutional prohibition, and it may not be exercised so as to deprive an abutting owner of the access to his premises furnished by the street, without making compensation; at least unless there is provided or left for him other means of access.

Under the act of 1880 (Chap. 147, Laws of 1880), which permitted the defendant to agree with commissioners appointed by the act on behalf of the city of Rochester, upon a plan to elevate its tracks along and across the city streets and to close up streets, etc., a portion of a street upon which plaintiff's premises abutted was discontinued and defendant having previously obtained title to the fee of the street, erected thereon an embankment about fourteen feet high, upon which it laid its tracks, leaving a space between it and said premises so narrow as not to admit of the approach of a team and carriage to them. Plaintiff's premises were used and occupied as a hotel and boarding-house. In an action to recover damages, upon these facts appearing, the court directed a verdict for the defendant. *Held*, error; that the plaintiff established a right to recover, and the question of damages should have been submitted to the jury.

*Radcliff* v. *Mayor, etc.* (4 N. Y. 195); *Coster* v. *Mayor, etc.* (43 id. 399); *Fearing* v. *Irwin* (55 id. 490); *Wilson* v. *N. Y. C. & H. R. R. R. Co.* (Unreported, see *mem.* of decisions, 39 Hun, 651), distinguished.

(Argued June 25, 1891; decided December 1, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made the first Tuesday of June, 1888, which affirmed an order directing a verdict in favor of defendant and directed judgment upon said verdict and denied motion for a new trial.

This action was brought to recover damages arising from the construction in the street in front of plaintiff's premises by defendant of elevated tracks, and thus depriving her of light, air and access.

At the close of the evidence on the trial, the court directed

a verdict for the defendant, to which plaintiff excepted and the court thereupon ordered the exceptions to be heard at the General Term in the first instance.

The principal facts in the case are these : Plaintiff's premises are situated upon North avenue formerly North street, which has been a street in use by the general public for many years and afforded access to plaintiff's premises. Under the act of the legislature, chapter 147, Laws of 1880, the defendant agreed with commissioners appointed by the act upon behalf of the city of Rochester, upon a plan to elevate the track along and across the streets in said city, to close up streets and to change the location of its tracks. In carrying out the plan, the portion of said street in front of plaintiff's premises was discontinued· and the defendant erected at that point an abutment of stone and an earth embankment about fourteen feet in height and upon it placed its rails and structure and operated its road, leaving but a narrow space between it and plaintiff's premises insufficient to admit of the approach of a team and carriage to them. The defendant had acquired previously to the time of discontinuing the street the fee of the same for railroad purposes, subject to its use for the general public. The plaintiff's premises had for several years previously, and at the time of said change, been used as a hotel and boarding-house and the rental value of the same had been diminished in consequence of these changes. No compensation had been made to plaintiff.

Other facts will be found in the opinion.

*Thomas Raines* for appellant. Neither the legislature nor the city of Rochester nor both combined could devote the street to purposes inconsistent with such street uses without compensation. (*Abendroth* v. *M. R. Co.*, 122 N. Y. 11 ; *Kane* v. *M. E. R. Co.*, 125 id. 164 ; *Powers* v. *M. R. Co.*, 120 id. 183 ; *Fobes* v. *R., W. & O. R. R. Co.*, 121 id. 505 ; *Lahr* v. *M. R. Co.*, 104 id. 268 ; *Cogswell* v. *N. Y. & N. H. R. R. Co.*, 103 id. 10 ; *Story* v. *N. Y. E. R. R. Co.*, 90 id. 122 ; *Mahady* v. *B. R. R. Co.*, 91 id. 148.) The acts of defendant

were not authorized by the law, under which defendant justifies. (Laws of 1880, chap. 147; *Cogswell* v. *N. Y. & N. H. R. R. Co.*, 103 N. Y. 10; *Bellinger Case*, 23 id. 29; 55 id. 54; 70 id. 368; *Bohan* v. *P. I. G. L. Co.*, 122 id. 18.) The opening or mapping out of lands as a street is a pledge that it shall not be closed or appropriated to a different and a less beneficial purpose which cannot be violated without a breach of faith to subsequent purchasers and builders. (Dillon on Mun. Corp. [4th ed.] § 666; 16 Cent. L. J. 124.)

*Edward Harris* for respondent. The plaintiff is not entitled to any damages by reason of any obstruction of means of access to her premises from the street, because it appeared that she has just as complete access to the street in front of her premises as she ever had. This is not the case of user by defendant of any part of a highway. (*Story* v. *N. Y. E. R. R. Co.*, 90 N. Y. 122; *Conklin* v. *N. Y., O. & W. R. Co.*, 102 id. 107; *Fobes* v. *R., W. & O. R. R. Co.*, 121 id. 505.)

Potter, J. The action is brought to recover damages occasioned to plaintiff's means of access to her building and premises, and to the air and light incident thereto, in consequence of the structure of defendant in front of or near, the plaintiff's premises.

A street or highway is principally designed and devoted to the use of the public to travel upon with teams and carriages and upon foot, and it may not be used for any other purpose, except it be a *quasi* public use, such as a railroad carrying persons and freight under certain limitation. (*People* v. *Kerr*, 27 N. Y. 188; *Kane* v. *N. Y. E. R. R. Co.*, 125 id. 164.)

Certain town and city officers are made by law trustees of highways and streets, and are charged with the care of them, and their legitimate use for the purpose of ordinary travel and passage by teams, vehicles and persons on foot.

The officers having charge of ordinary country roads have not the absolute power to lay out a new, or to close an old, highway. They cannot do either of said acts without the consent of the owners or abutters, or a course of legal procedure

prescribed by statute, after notice to the owners, abutters and those interested, and the verdict of a jury, and the assessment and payment of the damages sustained in consequence of the laying out of a new, or the discontinuance of an old, road. (See the various provisions of art. 4, title first, chap. 14, part 1, R. S., and the Laws of 1882, ch. 317.)

The charters of all cities, so far as I have had occasion to examine or observe them, contain similar provisions restricting the exercise of the power to open or close streets by municipal authority. I find the following in sec. 167, sub. 4 of the charter of the city of Rochester upon this subject, viz. : "The executive board, whenever authorized by the common council, shall have the same power with respect to said city, to discontinue any street therein, as is now by law possessed by commissioners of highways of towns, with respect to roads in towns; and the same proceedings shall be had, and the same appeal shall lie, from the decision of the said executive board, and the same proceedings shall be had on such appeal as are now provided by law in reference to towns so far as applicable."

I do not at all question the power of the legislature to open and to close streets and highways within the constitutional limits, but I refer to these restrictions to show the safeguards and protection to the citizen which the legislature has imposed upon the public officers in the exercise of the power to open and close streets and highways.

But the legislature itself may not exercise this power absolutely and without regard to the rights of the citizen. The Constitution imposes the restraint upon the legislature that it shall not appropriate private property to public uses without just compensation therefor to the owner of the property. (Art. 1, § 6; *Abendroth* v. *Man. R. Co.*, 122 N. Y. 1.)

Had the plaintiff any rights to air, light or access as "abutting owner" of lands bounded upon the street, which was closed as a street and upon which "all the structures of the defendant complained of in this case are situate?"

The street which was occupied by defendant's structure in this case had been in the use of the general public as a street

for more than fifty years, and the plaintiff and her grantors had used the access which it afforded to her house and premises for that period of time.

The structures complained of practically destroyed the only access to the plaintiff's premises with a team and wagon, and the annual rental value of the plaintiff's premises was diminished in consequence of the defendant's structures by the sum of four or five hundred dollars. It has been held by this court, and recently by each division of it, that " An owner of a lot adjoining a city street, although his title extends only to the side of the street, and he has no ownership of the land or interest therein, save as abutting owner, has incorporeal private rights therein, which are incident to his property, and which may be so impaired as to entitle him to damages. Such rights are private property, within the provisions of the State Constitution (Art. 1, § 6), which forbid the taking of private property for public use, without just compensation. It is no justification, therefore, for the impairment that the act complained of was done pursuant to legislative authority. (*Abendroth* v. *Man. R. Co.*, 122 N. Y. 1.)

" The owners of lots abutting on a city street, the fee of which is in the municipality, have, by virtue of proximity, special and peculiar rights, facilities and privileges therein in the nature of easements, which are not common to the citizens, and constitute property of which they cannot be deprived by the legislature or the municipality, or both, without compensation ; and any use of such street inconsistent with its use as a public street, which interferes with these easements, is a taking of property, for which said owners are entitled to compensation to the extent of the damages occasioned thereby." (*Kane* v. *N. Y. E. R. R. Co.*, 125 N. Y. 165.)

Since the able and exhaustive examination which this question has received in the opinions of the court in the two cases last referred to, there is no occasion for further discussion of it. These cases hold, and they are supported by numerous authorities, that though the defendants therein had constructed and run their roads under authority of the legislature and of

the municipality, yet there was a right of access to the plaintiff's premises for substantial interference with which defendant was liable, and that the plaintiff could not be deprived of such right without just compensation.

We come now to the more particular consideration of the question whether a party enjoying the right of light, air and access may be deprived of such rights by the action of the municipal authority in the discontinuance of the street in respect to which such rights exist without compensation therefor, or any provision for compensation. This question may be considered as simply a discontinuance of the street in question, within the power and discretion possessed by the proper officers of the city of Rochester, or as a discontinuance or an alteration of this street by municipal authority, or by commissioners acting for the municipality, under an act of the legislature in connection with and in futherance of the convenience and advantages of the defendant's railroad. Can the city exercise such power in a manner that shall deprive a citizen of the right of access to his premises while affording or leaving him no other access? We have seen from the cases above cited, that a municipality cannot divest the citizen of such rights, even where the municipality grants the right of laying the tracks and running the cars of a railroad along one of the streets of a city which is still devoted to and used by the general public as a street.

Under the provisions of the statute in relation to county roads, and as I apprehend under most city and village charters as to streets and roads in cities and villages, the officers having them in charge cannot arbitrarily abandon or discontinue them.

The statute provides a regular mode of procedure with compensation to effect a discontinuance of them. The question of the right or power of a municipality to discontinue a street has frequently been presented to the courts of this state, and it has been held that the authorities might do so when it is done in the manner prescribed by law and when *there is left to the private citizen other and suitable means of access.* To

that .effect are the cases of *Radcliff* v. *Mayor*, etc. (4 N. Y. :195); *Coster* v. *Mayor*, etc. (43 id. 399); *Fearing* v. *Irwin* ;(55 id. 490).

But it will be observed upon an examination of these cases, ᵣthat they clearly and distinctly recognize the right of access, and that the owner of such rights cannot be deprived of a ·street affording him access to his premises, unless there is left for his use and enjoyment other suitable means of access, or ·the payment of a just .compensation for the deprivation of the ᵢ same.

Such was .the character of the case of *Wilson* v. *N. Y. C. & H. R. R. R. Co.*, forming a part of the brief of respondent's ·.counsel, and upon .the authority of which the learned General Term seems to have relied in the decision of this case. In ·that case the plaintiff's lot extended from King to Litchfield ᵢstreets in the city·of Rochester. The defendant, under chapter 147 of the Laws of 1880 (the act in question in this case), ᵢclosed up Litchfield street, but left the access afforded by King ·street. In short, did not deprive the plaintiff of the means of .access to his lot. I am not disposed to adopt the doctrine that a municipality may close up a street upon which abutting owners have built expensive structures for residences and .business, and enjoyed access to them from the street so closed ᵢfor many years, arbitrarily and without compensation for the ˙injuries done to such rights. Such rights are substantial and essential rights for the enjoyment of property and are appur- ·tenances .thereto. (*Abendroth* v. *M. R. Co.*, *supra*, at page ·15 of the opinion, and the cases there cited; *Kane* v. *N. Y. E. R. R. Co.*, *supra*, at page 183, and cases there cited.) ᵢ

It would thus seem that the plaintiff could not be deprived ·of her rights if the city of Rochester itself, under any power that may reside in its municipal charter, had closed the street :and debarred the plaintiff from the enjoyment of those rights ·without making·or providing compensation therefor.

But it may 'be .contended that that view is not the real aspect in which this case is to be considered and decided. The .municipality of the city of Rochester did not directly close

this street and in that way interfere with the plaintiff's right, and that we need not here discuss or decide the liability of the city for that act, as it is not a party to the action.

The defendant, the railroad company, did the act complained of, and this action is brought against that company for its agency in interfering with and violating plaintiff's rights. The railroad company had laid its track upon this street with the consent of the city of Rochester, and by virtue of its right under condemnation proceedings. The right it acquired under the latter proceeding was the right to use this street to lay its track and run its cars, subject to the older and superior rights of the general public to use the street and, as we have seen, subject to the rights of the abutters to access, air and light.

Now it seems to follow as a conclusion from these premises that if neither the state nor the city of Rochester could legally close this street without making compensation to the abutting owners, the defendant railroad company acquired no right to erect its structures in such abandoned or discontinued street. (*Stetson* v. *Faxon*, 19 Pick. 147.) And if the street has not been legally discontinued, then the right of the railroad company is still limited as it was when it was first acquired, and is subject to the rights of the plaintiff in respect to easements and to the rights of the general public in respect to travel and passage. When, therefore, the defendant placed the structures complained of in the street, it violated the rights of the plaintiff in a much more marked manner than was done by the elevated railroad companies in *Abendroth* and *Kane* cases, *supra*, and for which this court held them liable in damages.

Since examining this case and writing the views and the conclusion above expressed, I have had an opportunity of perusing the very able and interesting opinion of Judge Andrews in the case of *Reining* v. *New York, L. & W. R. Co.* (128 N. Y. 157), recently decided, but not yet in the regular reports.

The facts in that case were briefly these : The defendant road was located upon Water street in the city of Buffalo. Plaintiff's building was located upon premises fronting and

abutting said street.     Upon the east of plaintiff's premises was Commercial street, and upon the west was Maiden Lane street. The municipal authorities of the city of Buffalo authorized the defendant in that case to raise the grade of Water street some five or six feet in front of plaintiff's premises, and extending beyond the crossing of Commercial street and leaving a strip of some nine feet in width along the north side of Water street for a wagon-way, and a strip fourteen feet wide for a sidewalk at the former grade.     The raised grade was twenty-four feet wide and was supported by stone walls, and was paved and used as a street when that action was commenced.

The learned judge, in his opinion, reviews the cases bearing upon this subject and distinguished it from the case of *Fobes* v. *R., W. & O. R. R. Co.* (121 N. Y. 505), upon which the defendant in that case sought to sustain the defense and held that the raising of the grade of the street in that manner, even under the license of the authorities of the city of Buffalo, was a violation of the plaintiff's rights of access, though the plaintiff had no title to the land within the lines of the street, and that the defendant was liable for the damages plaintiff had sustained.     The case under consideration is a much stronger case than the case cited.

In the case under consideration the obstruction *prevented* access to the plaintiff's premises with a team and vehicle.     In the case referred to, it made it *inconvenient* to approach plaintiff's premises in that manner.

We think the direction of a verdict for the defendant was error, and that the question of plaintiff's damages should have been submitted to the jury.     The judgment should be reversed and a new trial granted, with costs to abide event.

All concur, except BRADLEY and HAIGHT, JJ., not sitting.
Judgment reversed.