EGERER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 22, 1899.)

1. APPEAL—CONCLUSIVENESS OF DECISION.

Though, on appeal in an action by a property owner for damages for prevention of access to his premises by an obstruction in the adjacent street, the court of appeals, in rendering its decision, erroneously assumed that all access to the premises was prevented, the rule of law laid down, that a street cannot be closed, by legislative or municipal enactment, so as to deprive an abutting owner of access, without compensation, or leaving other means of access, is binding on the supreme court on a second appeal.

2. BOUNDARIES—QUESTION FOR JURY.

In an action involving a dispute as to the division line between adjoining owners, plaintiff gave evidence that, when title to defendant's land was originally acquired, a fence had been erected on the line, portions of which fence still remained.   Defendant proved a survey showing the line to be as he claimed, but the starting point thereof was based on information given the surveyor, and no monuments in the description of defendant's land were found.   Held, that the question of boundary was for the jury.

3. EMINENT DOMAIN—OBSTRUCTION OF STREET.

A person owned a lot adjacent to two intersecting streets, from one of which he had convenient access to his premises by means of a driveway and walk.   The city closed such street, and permitted a railroad to erect an embankment thereon, and on the other street, so as to prevent access to the abutting property by the driveway, and leave access from only a portion of the other street.   Held, that a suitable means of access was not left, so as to deprive the owner of compensation.

Action by Frederika Egerer against the New York Central & Hudson River Railroad Company.   On motion for a new trial on exceptions ordered to be heard at the general term in the first instance, after trial and direction of a verdict for defendant.   Exceptions sustained.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and McLENNAN, JJ.

Thomas Raines, for plaintiff.

Edward Harris, for defendant.

ADAMS, J.   The plaintiff brings this action to recover damages which she claims to have sustained by reason of the erection by the defendant of an embankment and structure to sustain its elevated tracks in front of, or adjacent to, her premises in the city of Rochester, and which it is claimed interfered with her right of access thereto, and with her enjoyment of certain other incidental rights and privileges.   The action was commenced in September, 1884, and was first tried in January, 1886.   At the close of the evidence the trial court directed a verdict in favor of the defendant, to which direction the plaintiff duly excepted.   Thereupon the exceptions were ordered to be heard at the general term in the first instance, and they were overruled by that court, and judgment was ordered for the defendant upon the verdict.   From such judgment an appeal was taken to the court of appeals, where the judgment was reversed, and a new trial ordered.   130 N. Y. 108, 29 N. E. 95.   At the close of the

evidence upon the second trial a verdict was again directed for the defendant, upon substantially the same evidence as was given upon the former trial. The record does not disclose upon what ground, the last verdict was directed, but the explanation given by the defendant's counsel of the apparent conflict between the trial court and the court of appeals is that the decision of the last-named court was obviously founded upon a misapprehension of the facts of the case. Upon a careful perusal of the opinion of that tribunal, we are inclined to think that in so far as it is based upon the assumption that the street in front of the plaintiff's premises had been appropriated by the defendant to such an extent as to interfere with, and virtually prevent, all access to the plaintiff's premises by a team and wagon, it fully warrants the explanation offered by the learned counsel; and it is altogether probable that had the attention of the court been directed, in the ordinary manner, to its inexact statement of facts, the error into which it is said to have fallen would have been corrected, and possibly a different conclusion reached. But, however this may be, the rule of law laid down by the court of appeals, to the effect that a public street in a populous city cannot be closed, either by legislative enactment or municipal authority, so as to deprive an abutting owner of the access to his premises which was thereby afforded, without making proper compensation, or providing or leaving other means of access, is one concerning which there can, of course, be no dispute; and we must therefore deem it established and controlling for the purposes of this review. So it would seem that the only question which can now come up for our consideration is whether that rule of law is applicable to the facts of the case as they now appear. In order to determine that question, it will be necessary to advert briefly to a few of the established facts of the case, and then to certain evidence concerning which there is more or less controversy.

North street, in the city of Rochester, runs practically north and south; and at a point in front of the plaintiff's premises it was at one time intersected by another street, known as "North Avenue," which extended in a northeasterly direction from North street. The defendant, as it appears, had acquired the fee to North avenue for railroad purposes, subject to the use thereof by the general public; and its tracks—four in number—crossed both streets at or near the point of intersection. Under the provisions of chapter 147 of the Laws of 1880, the defendant agreed with commissioners representing the city of Rochester upon a plan to elevate its tracks over and along the streets of that city; and, in order to better accomplish such plan, it was further agreed that the westerly end of North avenue, as it then existed, should be closed, and that the avenue should intersect North street at a point about 50 feet further north, over and upon lands owned by the defendant, which the latter agreed to dedicate to the public for that purpose. This arrangement was thereafter consummated, and in 1882 the westerly end of North avenue was closed, and the defendant erected thereon an earth embankment 14 feet in height, and a stone abutment, upon which it placed its rails and operated its railroad. The plaintiff's premises, consisting of a house

and lot and one or two smaller buildings, which were used by her for hotel and boarding-house purposes, were located upon the east side of North street, and the southeasterly side of North avenue, as it existed prior to 1882; the northerly line thereof being the southerly line of the defendant's land. For many years prior to the time North avenue was closed and appropriated by the defendant in the manner just described, there had existed a sidewalk and driveway extending from North street along the north side of the plaintiff's main building, which she had been accustomed to use as a means of reaching the rear end of her premises, and of unloading coal, groceries, and other commodities from wagons into the cellar of her hotel. When the defendant elevated its tracks, the south wing wall of the east abutment of the bridge upon which such tracks crossed North street was so constructed as to extend across the westerly end of what was formerly North avenue, to a point within about 3 feet of the southeasterly line thereof, and from that point the defendant erected a fence upon what it claimed to be its southerly line; and this fence ran in an easterly direction until it struck a building upon the plaintiff's premises called the "Shop," the northerly side of which projected about 2 feet beyond the fence. This fence also cut off the northwest corner of a piazza in front of the plaintiff's hotel, and, in connection with the east abutment of the bridge, it prevented all access to the walk and driveway, and deprived the plaintiff of the further use of the same. It likewise reduced her frontage on North street from 34 feet to 20 feet 4 inches. In consequence of this interference with what the plaintiff claims to be her legal rights, she has been put to much trouble and annoyance, and the rental value of her premises has been seriously diminished, for which the defendant has neither made nor offered to make any compensation. The facts thus far stated are virtually uncontradicted, and, if there were nothing more of the case, they would seem to establish pretty clearly the cause of action which the plaintiff has set forth in her complaint; but it is contended on behalf of the defendant that the walk and driveway to which the plaintiff is now denied access are not upon her premises at all, but are both inside of the defendant's south boundary line, as are also the northwest corner of the piazza and the west end of the plaintiff's shop; and it is by reason of this contention that the real question which the case presents undoubtedly arises, for if, as a matter of fact, the defendant's claim is well founded, it would seem that it had a right to take the action of which the plaintiff complains, whereas, if, upon the other hand, the southerly line of its premises is where the plaintiff claims it to be, her right to compensation is probably established, within the rule laid down by the court of appeals. It is obvious, therefore, that this case cannot be determined until the location of this line is definitely ascertained; and it is in regard to this phase of the case that the conflict in the evidence to which allusion has been made arises.

On the part of the plaintiff, evidence was given which tended to support her contention, and to establish, among other things, that the defendant's premises, which adjoin those of the plaintiff upon the north, were originally acquired by what is now known as the

"Old" or "Auburn" Road; that they consist of a strip of land 17 feet in width on both the north and south sides of the center line of location; that this line runs on a curve with a radius of 2,865 feet, beginning at a point in Scio street east of the plaintiff's premises, and terminating at Clinton street, which is a short distance west of North street; that, shortly after the title to these premises was acquired, a fence was erected along the entire south line thereof; that in course of time this fence, or portions thereof, rotted away, and in 1856, when the plaintiff's house was built, little or nothing remained of the fence from North street to the point where the building called the "Shop" now stands; and that the line of the fence as it was originally built was 1 foot 6 inches north of the corner of that building. A portion of this old fence is still standing at the easterly end of the plaintiff's lot, the location of which is delineated upon the maps which were introduced in evidence, and these maps make it apparent that the new fence which has since been erected by the defendant immediately east of North street is several feet south of the line upon which the remaining portion of the old fence now stands. To meet this evidence the defendant called the engineer under whose supervision the tracks were elevated, who testified that he made a survey of the defendant's property, with a view of ascertaining the center line thereof; and, as a result of such survey, he locates the south line where the new fence was erected. This witness admitted, however, that the starting point of this survey was based upon information furnished him by other parties, and that he found none of the monuments referred to in the description of the defendant's land. There is some additional evidence in the record before us which is more or less relevant to the particular question under consideration, but which it will not be necessary to advert to in this connection, inasmuch as we think we have already made it clear that the case presents an issue of fact, as to the location of the defendant's south boundary line, which ought to have been submitted to the jury, and that, as already suggested, the determination of that issue will necessarily determine the plaintiff's right to recover.

It is due to the defendant, however, that proper consideration should be given to the contention of its learned counsel that the plaintiff must fail in her action because, even if deprived of the former means of access to her premises from North avenue, she may still approach them from North street. The court of appeals, in deciding this case, recognized the right and power of a municipality to discontinue a public street, provided that in so doing it left an abutting owner other suitable means of access to his premises; and, if the means left to this plaintiff can be fairly deemed "suitable," within the ordinary meaning of that word, the defendant's contention would have something substantial upon which to rest. But can it be said, in the circumstances of this case, that it is such? One has but to glance at the maps, to obtain a satisfactory answer. Heretofore opportunity was afforded for both people and teams to pass from North avenue along the entire north side of the plaintiff's main building, and between the building and the shop. Under existing conditions, nei-

ther the north side of the building nor the shop can be reached at all, and the only means of approach is from North street, over an intervening space of 8 or 10 feet, to the plaintiff's piazza; and even this means of access has been very materially reduced by reason of the abutment which the defendant has erected. This certainly is not a desirable nor a convenient means of access, and, as compared with the one which formerly existed, it can scarcely be regarded as suitable; and it is, therefore, not one which, in our opinion, the plaintiff should be forced to accept as a substitute for another and much more desirable one.

Our conclusion of the whole matter, then, is that the trial court should have submitted this case to the jury upon the lines we have indicated as the proper ones, and that for its failure so to do a new trial should be granted.

Exceptions sustained, and motion granted, with costs to the plaintiff to abide the event. All concur.