and buildings the court has no power to declare a lien upon other property. This particular money, when deposited, became the money of Mapes & Son. The plaintiff admits this in his complaint. Their contract with Livingston provided that, in case liens were filed, he might deposit with the clerk a sum sufficient to discharge the same, "and such deposit shall be deemed a payment under this contract on account of said work." Livingston made this deposit. at the request of Mapes & Son. In their request they directed him "to deduct the amount out of the money due us on the fourth payment on the house." It was a payment to Mapes on account, and could no more be reached by a mechanic's lien subsequently filed than it could if the payment had been made directly to Mapes and been deposited in the bank by him. The claim of the assignee to this fund must be sustained.

The conclusion of the whole matter is that there should be judgment in this action that the property of Livingston at Highland is chargeable under the Mapes contract with the sum of $4,604.50, with interest; that Brown & Son are entitled to be first paid the sum of $1,350, with interest from January 15, 1896; that Dain's Sons are then entitled to be paid the amount of their lien, being the sum of $2,794.28, with interest from December 19, 1895; and that any balance of the sum so found to be due be applied upon the claim of Brown & Son for $4,446 (less $1,350), with interest from January 20, 1896.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Hector M. Hitchings, for appellant White.

L. Laflin Kellogg, for appellant Livingston.

Frederick P. Bellamy and I. N. Sievwright, for respondents Henry J. Brown and another.

Franklin Couch, for respondents Dain.

Charles De Hart Brower, for respondent Kimber.

PER CURIAM. Judgment affirmed, with costs, on the opinion of Hamilton Odell, Esq., referee. All concur.

---

(70 App. Div. 421.)

EGERER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. March 11, 1902.)

1. EMINENT DOMAIN — GRADE CROSSING—ABOLISHMENT—LOSS OF ACCESS TO PREMISES, LIGHT, AND AIR.
    While the legislature has power to provide for the abolition of grade crossings of city streets, abutting owners on the streets, though having title only to the margin thereof, have incorporeal rights of light, air, and access in the nature of easements, in the street itself, of which they cannot be deprived, for such purposes, without compensation being made under Const. art. 1, § 6, declaring that private property shall not be taken for public use without just compensation.

2. SAME—LOCATION OF WALL—EVIDENCE—SUFFICIENCY.
    Evidence examined, and held sufficient to sustain a finding that a wall erected by a railroad company in abolishing a grade crossing extended in part beyond the southerly line of the railroad's right of way, and onto the property of an abutting owner.

Appeal from trial term, Monroe county.

Action by Fredrika Egerer against the New York Central & Hudson River Railroad Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, and HISCOCK, JJ.

Edward Harris, for appellant.

Thomas Raines, for respondent.

WILLIAMS, J.   The order appealed from should be affirmed, with costs.   The action was brought to recover damages for an obstruction of the street in front of plaintiff's premises, whereby she was deprived of her easements of light, air, and access.   There have been three trials of the action.   On the first trial there was a verdict directed for defendant.   There was an affirmance at general term (49 Hun, 605, 2 N. Y. Supp. 69), but a reversal in the court of appeals (130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381).   On the second trial a verdict was again directed for the defendant.   There was a reversal by the appellate division.   39 App. Div. 652, 57 N. Y. Supp. 133. On the third trial a verdict was rendered for the plaintiff, which is here under review.   The obstruction complained of was erected by the defendant under an agreement with grade-crossing commissioners appointed under chapter 147, Laws 1880, for the purpose of eliminating grade crossing of railroads in the city of Rochester.   No provision was made in that act or in the charter of the city (chapter 14, Laws 1880) for compensation to property owners for any property interests or rights that might be invaded or taken in carrying out the objects to be secured under the grade-crossing act.   No compensation has ever been made to the plaintiff, nor steps taken to acquire any rights or consent of plaintiff, with reference to the obstruction in question. It is well settled that, while the legislature has the power to provide for the removal of grade crossings of city streets by steam railroads, still the owners of property abutting upon the streets, though their title extends only to the margin thereof, have the incorporeal rights of light, air, and access, in the nature of easements, in the streets themselves, which constitute private property, and which they cannot be deprived of by the legislature or the city, or both, without compensation under article 1, § 6, of the constitution of the state.   Abendroth v. Railroad Co., 122 N. Y. 1, 25 N. E. 496, 11 L. R. A. 634, 19 Am. St. Rep. 461 ; Kane v. Railroad Co., 125 N. Y. 165, 26 N. E. 278, 11 L. R. A. 640 ; Reining v. Railroad Co., 128 N. Y. 157, 28 N. E. 640, 14 L. R. A. 133 ; Egerer v. Railroad Co., 130 N. Y. 108, 29 N. E. 95, 14 L. R. A. 381 ; Holloway v. Southmayd, 139 N. Y. 390, 34 N. E. 1047, 1052.   In the last case Gray, J., considered and distinguished several cases cited by the appellant herein, viz.:   Jackson v. Hathaway, 15 Johns. 447, 8 Am. Dec. 263 ; Wheeler v. Clark, 58 N. Y. 267 ; Insurance Co. v. Stevens, 101 N. Y. 411, 5 N. E. 353 ; King v. City of New York, 102 N. Y. 175, 6 N. E. 395 ; and we need not, therefore, discuss them here.   It was said by Gray, J., among other things, that these private easements are independent of the public easement, and are in their nature indestructible by the public authorities.   There can, therefore, be no doubt as to the right of the plaintiff to recover damages for any obstruction of the street in front of her premises, by the defendant, whereby she was deprived of her easements of light, air, and access.

The defense was based upon the claim, in effect, that the obstruction was not erected in front of her premises.   The agreement between the

commissioners and the defendant was made, and the obstruction erected, in or about the year 1882. Prior to that time North avenue left North street at the intersection of the latter street by the defendant's railroad. North street ran substantially north and south, and North avenue extended off in a northeasterly direction. Plaintiff's premises faced upon North avenue, and were bounded on the west by the avenue and on the north by the defendant's right of way. The agreement between the commissioners and the defendant provided that North avenue should be changed and diverted into North street, northerly of defendant's right of way, across a triangular piece of land there owned by the defendant, and abdicated to the public use for that purpose, and the portion of the avenue required to be inclosed by walls upon its right of way to support the elevated structure and tracks should be abandoned and discontinued. This change in the avenue was made as agreed upon, and the southerly portion thereof was used for the erection of the walls to support the elevated structure and tracks. The walls were erected within the limits of the avenue, but whether the southerly portion thereof was wholly within the defendant's right of way was a matter in dispute upon the trial. There was a controversy as to the precise location of the southerly line of such right of way, and plaintiff claimed the wall—some part of it—extended southerly beyond such line. In either event, however, the wall was in front of the plaintiff's premises in the part of the avenue abandoned and discontinued by the city. The wall interfered very materially with plaintiff's easements, the right of light, air, and access, whether it was in whole or in part only within defendant's right of way; and the plaintiff claimed the right to recover damages regardless of the question as to the precise location of the line in controversy. The plaintiff's right to recover on the trial, however, was limited to a finding by the jury that the obstruction was in part south of the boundary line of defendant's right of way, and this finding was made by the jury upon conflicting evidence. Some difficulty was experienced in satisfactorily establishing the disputed line, and it is claimed by the defendant that the finding of the jury locating the same was against the weight of the evidence, and should be set aside for that reason. The parties derived their titles from a common grantor, one Hiram Davis. The defendant's right of way was acquired by the Auburn & Rochester Railroad Company (to whose rights defendant succeeded) in 1839. It was 34 feet wide, and was on a curve through Davis' lands. At the same time a right of way was acquired through the lands of Benedict and Penny, lying east and west of the Davis lands. This right of way through Davis' and Benedict's lands was fenced by the railroad company on its south line, and a portion of this fence was standing at the time the plaintiff's lands were deeded to plaintiff's husband in 1856. The railroad company also constructed a ditch for the purpose of draining its roadbed just north of and near to the fence, along the Davis and Benedict property, a foot wide at the bottom and 8 to 10 feet wide at the top, and 5 feet deep. The fence did not extend in 1856 all the way to North avenue, then North street, but only 50 or 60 feet westerly from the easterly line of plaintiff's premises. The ditch, however, extended all the way along the plaintiff's premises

from her easterly boundary to North avenue and North street, and was covered with planking across the avenue and street. None of the monuments mentioned in the description of the right of way, through the Davis, Benedict, and Penny lands, as originally acquired, remained at the time of the trial. All had ceased to exist for more than 20 years. The first deed in plaintiff's chain of title was given by Davis to Luckey in 1843, and descrbed lands as bounded on the north by the railroad; on the west by North street (a portion afterwards called "North Avenue"); on the south by Tyler street, as laid out on a map filed in Monroe county clerk's office, but not then opened; and on the east by a line far enough from North street, between Tyler street and the railroad, to include three acres of land. In August, 1854, Luckey first deeded to Washburn a portion of the three acres other than plaintiff's premises, bounding the property so conveyed as commencing at Tyler street, 25 feet west of the corner of Sand's lot, and running thence northerly, in two courses, 46 feet and 142 feet and 10 inches, to a stone set in the ground by the railroad fence, the south line of the railroad; thence westerly on south line of the railroad 35 feet 6 inches; thence southerly in a direct line to Tyler street; thence easterly on Tyler street, in two courses, 59 feet and 42 feet 3 inches, to the place of beginning (survey made by Cornell). Luckey next deeded to Frederick Benedict a portion of the three acres other than the plaintiff's premises, bounding the property so conveyed as beginning at the corner of North street and Tyler street, and running thence northerly along North street to a point within 20 feet and 4 inches of the railroad fence on the south side of the railroad; thence easterly to a point on the west line of Washburn's lot 116 feet north of Tyler street; thence south on Washburn's line to Tyler street; thence west on Tyler street to the place of beginning. Then Luckey deeded to Alfred Benedict the plaintiff's premises, describing the same as being on the east side of North street (afterwards North avenue), and on the south side of the railroad, beginning at a point in the west line of the Washburn lot, 116 feet north of Tyler street, and running westerly on Frederick Benedict's north line to North street (avenue); thence northeasterly along that street (avenue) to the railroad; thence easterly along the railroad to the Washburn's west line, stated in Cornell's survey to be 112 feet; thence south on Washburn's west line to the place of beginning, marked in the same survey as 66½ feet. Plaintiff's chain of title then continued with this same description by deed from Benedict to Benedict in 1855, from Benedict to Egerer (plaintiff's husband) in 1856, and from her husband to herself, through one Yeck, in 1859. Later, and in 1873, the plaintiff deeded, through Yeck, to her husband, a triangular piece in the northerly part of this property, and described the same as on the east side of North street (avenue), and bordering on the railroad, beginning at a point in the south line of the railroad, 37 feet east of its intersection with the east line of North street (avenue); running thence easterly along the railroad about 75 feet to the Washburn land; thence along Washburn's northerly line southerly to the southeast corner of the house on the premises conveyed; thence westerly to the place of beginning. The precise location of Tyler street as indicated upon the map on file was in

dispute on the trial. There were no monuments to locate it, and it was not opened at the time Davis gave his deed to Luckey, in 1843. The Egerers, husband and wife, went into possession of the property in question in 1856, and have continued in possession ever since. There were then no buildings upon the property. The whole tract of land was open between the railroad and Tyler street. There was the fence and ditch constructed by the railroad, and an old fence on Tyler street; no fence along North street or avenue. The Egerers erected the hotel building in 1856, as it now stands, including the piazza in front of it. In 1859 or 1860, the two-story house was built upon the triangle of land conveyed in 1873 by plaintiff to her husband, and in 1866 or 1867 the shop was built, and used originally as a barber shop. These buildings appear all to be parallel with the south line of the property; the hotel quite close to that line, and the other two buildings over near the railroad line. According to defendant's claim as to the location of its south line, these buildings all extend over such line, while plaintiff claims the line is clearly to the north of all of them. There was evidence of many other facts and circumstances given at the trial bearing upon the real and true location of this railroad line. We do not think it necessary to recite them in detail here. And then there are extended arguments of counsel in favor of their respective contentions. The plaintiff relies largely upon the fence and ditch constructed by the railroad, the fence being referred to in some of the deeds as the line of the railroad; also the use made by the plaintiff and her husband of the property in the location of buildings without objection on the part of the railroad. While the defendant relies largely upon the deeds in and connected with the plaintiff's chain of title, the language thereof, the distances stated, and the survey referred to therein.

Very likely it is difficult with absolute certainty to locate the disputed line, but we think there was evidence of circumstances sufficient to go to the jury, and that its verdict, based thereon, should not be set aside by us. We do not assent to the proposition that a recovery might not be had by the plaintiff, even if the jury were to find the line to be as claimed by the defendant; but that question is not involved on this appeal, because of the course the trial took, and the verdict having been rendered based upon a finding that the line was where the plaintiff claimed it to be. We are of the opinion that the verdict cannot be regarded as excessive, and therefore the views herein before expressed lead to the affirmance of the order appealed from, with costs.

Order affirmed, with costs. All concur.