(77 App. Div. 417.)

CITY OF NEW YORK v. REESING et al.

(Supreme Court, Appellate Division, First Department. December 19, 1902.)

1. MUNICIPAL CORPORATIONS — HACKMEN — REGULATIONS — ORDINANCES — CONSTRUCTION.

New York City Ordinances, § 456, provides that the proprietor of any hackney coach or cab who does not intend to use the public stands shall state such intention, whereupon a special license may be granted therefor; and section 457 provides that for such special license the sum of $5 shall be paid for every coach or carriage, and $3 for each cab. Held, that such sections applied only to the owners of cabs not entitled to use the public stands, and did not relate to the license fee to be paid by proprietors of cabs and carriages using the public streets as stands while awaiting employment.

2. SAME—USE OF STREETS—LICENSES.

Under Greater New York Charter, §§ 50, 51, authorizing the council to regulate the use of the streets by vehicles, and to provide for the licensing and otherwise regulating the business of hackmen, cabmen, etc., the city had power to pass an ordinance providing that the owner of hacks specially licensed shall, in addition to the lawful fees previously provided, pay an additional fee of $25 per year for each hack allowed to stand at any stand other than a public hack stand.

3. SAME.

New York City Ordinance May 22, 1899, § 12, provides that the owner of any hack not intending to use the public stands, and having the written consent of the owner or lessee of premises, may be specially licensed to use temporarily a portion of the street in front of such premises as a stand; and section 13 imposes on carriages so licensed an additional fee of $25, and prohibits any hackmen other than a licensed hackman from coming on or using such stand. Held, that the privilege of using the street in front of private premises as a hack stand exists only with the consent of the owner or lessee of the premises, but that such consent does not exempt the hack proprietor from the payment of the additional license fee prescribed.

Appeal from appellate term.

Action by the city of New York against George G. Reesing and another. From a judgment of the municipal court in favor of plaintiff, affirmed by the appellate term (77 N. Y. Supp. 82), defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and LAUGHLIN, JJ.

William J. Fanning, for appellants.
Henry C. Johnson, for respondent.

PATTERSON, J. The question upon which this case turns is a very narrow one, and relates only to the liability of the defendants

to pay a fine by reason of their violation of a city ordinance. They are livery stable keepers, and own and use in their business carriages and cabs which are hired for public use. They made an agreement with the proprietor of the Imperial Hotel in the city of New York to supply carriages or cabs to that hotel, and to pay the proprietor thereof 10 per cent. of the gross receipts. With the written consent of that proprietor, they keep from six to eight cabs standing in front of his premises awaiting passengers from the hotel. They have paid a license fee of $3 each for 25 cabs, including those which stand in front of the Imperial Hotel; that being the license fee chargeable upon what are called "special" hacks or cabs. While the defendants have the permission of the proprietor of the hotel to stand in front of his premises, and he shares in profits with them, they have not the permission of the city to use the street in front of the hotel as a cab stand. It has been sought on this appeal to have this court pass upon the right of a hotel proprietor to maintain a cab service in the street in front of his premises, but that question is not involved in this appeal, and its determination is not necessary to the ascertainment of the defendants' liability to pay the fine which has been imposed upon them. The city contends that the defendants have no right to use the street in front of the hotel as a cab stand, unless they pay a license fee of $25 for each cab, and receive a permit. By section 453 of the Revised Ordinances of the city of New York, which is still in force, it is provided that the owner or driver of any hackney coach or cab which shall stand waiting for employment at any other place "than as herein provided" shall be liable to a fine of $10, to be imposed by the mayor or his first marshal, and to be sued for and recovered by the attorney for the corporation for the use of the city. It is claimed by the plaintiff that the defendants, having no right to occupy the street in front of the Hotel Imperial with their cabs, except as stated, were liable to the fine mentioned in section 453, and such a fine was imposed by the chief of the bureau of licenses, the successor to the first marshal to the mayor. The fine not being paid, this action was brought on an agreed state of facts. Judgment was rendered in favor of the plaintiff in the municipal court, and on appeal to the appellate term of the supreme court was affirmed. By leave of the appellate term, an appeal was taken by the defendants to this court.

The main subject of consideration is the right of the defendants to occupy, with their cabs, a part of the public street, while waiting for employment, without paying a license fee of $25, as is required by provisions of the ordinances of the city of New York. In the agreed statement of facts it appears that under the municipal regulations the hack system of New York City has for many years practically divided all cabs, carriages, coaches, and such vehicles as are kept for hire into two classes, known and designated as "public" hacks and "specially licensed" or "special" hacks; that public hacks are allowed to use only the designated public hack stands while waiting for employment; that specially licensed or special hacks do not use the designated public hack stands while waiting for hire, but stand in livery stables, or in front of certain premises, such as hotels, etc., by virtue

of a special permit, and the class of special hacks is restricted to the carrying of passengers from the stables or premises in front of which they stand; that a special or private permit for certain specified stands is given by the executive department of the city government, but only with the consent of the owner or lessee of said premises. It is admitted in the statement of facts that the premises occupied by the Imperial Hotel "are not enumerated" as one of the regular designated places where public hacks may stand while waiting for employment, and, further, that the defendants did not use, nor intend to use, any of the regularly designated public hack stands of the city. Section 456 of the Revised Ordinances of the city of New York provides that the proprietor of any hackney coach or cab, who does not intend to come upon and use the public stands with such hackney coach or carriage or cab, shall, at the time of applying for the license of the same, state in writing such intention, and thereupon a special license may be granted, in the discretion of the mayor. Section 457 provides that for every such special license granted by virtue of this article shall be paid for every coach or carriage $5 and for each cab $3. The defendants' licenses for their cabs were granted under the terms of these two sections. Sections 456 and 457 relate merely to a license fee to be paid for a hackney coach, cab, or carriage which it is not intended by the owner shall come upon or make use of the public stands. These sections do not relate to a license fee to be paid by the proprietors of carriages or cabs that use the public streets as standing places while waiting for employment. It is provided in section 12 of the ordinance approved May 22, 1899, that the owner of any hack not intending to use the public stands, and having the written consent of the owner or lessee of the premises, in the discretion of the mayor or the chief of the bureau of licenses, may be specially licensed and permitted to use temporarily a portion of the street in front of such premises as a stand, and shall be confined to carrying passengers from said premises. Section 13 of that ordinance provides that the owner of hacks specially licensed shall, in addition to the lawful fees hereinbefore provided, pay annually an additional fee of $25 for each hack allowed any stand other than a public hack stand, and no other than a licensed hackman shall come upon or use the said stand. These sections of the ordinance not only relate to the payment of a license fee, but to the regulation of the streets, and were passed conformably to authority contained in sections 50 and 51 of the Greater New York Charter, which gives to the municipal legislature of the city the power to regulate the use of the streets and sidewalks by foot passengers, animals, or vehicles, and to provide for the licensing and otherwise regulating the business of hackmen and cabmen, etc. The charge of $25 for the privilege conferred by sections 12 and 13 of the ordinance of 1899 is in addition to the lawful fees for the special license. If the cab proprietor desires to use his vehicles without going upon the public stands, he must pay a license fee of $3. If he wishes to avail himself of the privilege of using the streets as a private stand under the permission and provisions of sections 12 and 13 of the ordinance of 1899, for that additional right and privilege he is required to pay a fee of $25 for each hack allowed so

to stand. That does not convert the private hack stand into a public hack stand. As is well remarked by the counsel for the city, all that the ordinance does or attempts to do is to provide separate stands, where each of two classes of licensed hacks may stand, and to forbid each to use the stand provided for the other.

We see nothing in the requirement that the additional license fee of $25 shall be paid for the privilege of a private stand beyond the authority of the municipal legislature to enact. The right and the power of the city to pass such ordinances cannot be questioned. A case is not presented of an ordinance authorizing the establishment of a hack stand in front of private premises without the consent of the owner or the lessee. The privilege of using the private hack stand, according to section 12, can only be with the consent of the owner or lessee of the premises. But the consent of the owner to hacks standing in front of his premises does not exempt the hack proprietor from the payment of the license fee required by the ordinance. It is admitted in the statement of facts that the defendants' cabs stand in front of the Hotel Imperial without the payment of the $25 license fee, hence they stand there awaiting employment at a place at which they are not authorized to stand without the payment of the license fee. So doing, the owner is brought within the provision of section 456 of the Revised Ordinances of the city of New York and is liable to the fine provided for in that section, there being no permit of the city given, as required by the ordinance.

The determination of the appellate term should be affirmed, with costs. All concur.