### HOTEL ASTOR v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, First Department. November 21, 1913.)

Appeal from Special Term, New York County.

Actions by the Hotel Astor against the City of New York and others; by the Greeley Square Hotel Company against the same; by the Hillard Hotel Company against the same; by the Waldorf-Astoria Hotel Company against the same; and by Hawk & Wetherbee against William J. Gaynor, Mayor, and others. From orders at Special Term (82 Misc. Rep. 94, 143 N. Y. Supp. 279) denying motions for injunctions pendente lite, plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

Morgan J. O'Brien, of New York City, for appellants.
Terence Farley, of New York City, for respondents.

PER CURIAM. Orders affirmed, with $10 costs and disbursements in each case, on opinion of SEABURY, J., at Special Term.

SCOTT, J. (dissenting). By this action the plaintiff, as lessee and operator of a large hotel in the city of New York, calls in question the validity of an ordinance recently adopted by the board of aldermen of the city of New York authorizing the establishment of public hack stands in the city of New York.

The general authority of the municipality to regulate hacks and hackmen and to establish hack stands is not questioned. Plaintiff, however, insists that the ordinance in question is not only unreasonable as to it, but actually invades and impairs its property rights as an abutting owner upon a public street. The particular provision of the ordinance to which the plaintiff objects reads as follows:

"Art. 4. The mayor is hereby authorized to locate and designate as public hack stands the space alongside the curb adjacent to property used as public parks, public buildings, railroad stations, steamship and ferry landings, hotels, restaurants, theaters and the center of any street or avenue where the roadway, exclusive of the sidewalk is 30 feet in width or more."

This provision is intended to supersede a prior ordinance, which has been in operation for many years, by which the mayor was authorized to designate what were known as special hack stands in front of hotels "where there is necessity therefor" and "with the approval and consent of the person occupying the premises." As to the necessity for the consent of the person occupying the premises, it was said in City of New York v. Reesing, 38 Misc. Rep. 129, 77 N. Y. Supp. 82, affirmed 77 App. Div. 417, 79 N. Y. Supp. 331:

"Assent of an interested party to such a disposition of his right to the street, as was made in this instance, is required in order to prevent any interference with the rights of the owner and lessees to the street in front of their premises on the part of the municipality."

The practical difference between the former ordinance and the present is this: That under the former ordinance the hotel proprietor was able to exercise supervision and discipline over the cab stands in front of his hotel; he could see to it that only proper cabs stood there and only respectable drivers were employed, and that the existence of the cab rank should not interfere with carrying on the business of the hotel, while under the present ordinance the cab stand will be open to any licensed hack whose driver will choose to come there, and the proprietor of the hotel will be able to exercise no control or supervision whatever over either the cabs or their drivers. It is easy to see how a proprietor who was willing to have had a special hack stand in front of his hotel might well object to having a public hack stand established there. It may safely be assumed that, at least in front of the larger hotels, the cab stands will be kept permanently filled up with waiting cabs, a new one moving up to take the place of each one that leaves the stand. The practical effect of the ordinance will therefore be to keep standing in front of each hotel, without the consent of and against the will of the proprietor, a permanent line of hacks awaiting and soliciting customers.

In my opinion this would constitute an invasion of the abutter's property rights which the law will not tolerate. As was well said by the learned justice from whose order this appeal is taken·

"The abutting owner has rights special and peculiar to himself which arise out of the relations of his property to the public street. His right of way and his right to the free and unimpeded ingress to and from his property, and to the easements appurtenant thereto, are clearly recognized by controlling legal authorities. (Citing authorities.) A legislative act or municipal ordinance which substantially interferes with this right violates the property rights of the abutting owner, whether the fee of the street is owned by the abutting owner or the public. Donovan v. Pennsylvania Co., 199 U. S. 279 [26 Sup. Ct. 91, 50 L. Ed. 192]; Story v. Elevated R. R. Co., 90 N. Y. 122 [43 Am. Rep. 146]."

The rule thus enunciated is too well known and too firmly established in this state to require further citation of authorities. The court, however, fell into error, as I conceive, by regarding the rights of the abutting owner as confined to the right of ingress and egress, and, so considering, found that the space of 30 feet provided by the ordinance to be kept clear in front of the door of a hotel fully satisfied whatever rights the abutter had in the street. In my opinion the abutter's rights go much further and extend to the right to insist that the street in front of his premises be kept clear of all permanent obstructions such as a public cab stand would amount to. The point is well illustrated in the opinion of Judge Danforth in the Story Case. It had been decided in People v. Kerr, 27 N. Y. 188, and Kellinger v. Forty-Second Street R. Co., 50 N. Y. 206, that the construction of a street railroad in a public street, without a change of grade, constituted a legitimate use of the street, when done with legislative authority. In commenting upon the Kerr Case Judge Danforth, writing in the Story Case, suggests that, while that case upheld the construction of a surface railway upon which cars were to pass and repass, it would probably have led to a different conclusion if the question had been presented of a siding or switch which the railway company used to keep its cars for storage. So while an abutting owner can find no valid objections to a law or ordinance which permits public hacks to pass to and fro along the public street, he may well object to an ordinance which permits them to stand in a long row in front of his premises while awaiting customers, thus interfering not alone with his access, but also with his easements of light and air. As was said in Rex v. Cross (3 Camp. 224), quoted in Callanan v. Gilman, 107 N. Y. 360, 14 N. E. 264, 1 Am. St. Rep. 831:

"Every unauthorized obstruction of a highway to the annoyance of the king's subjects is a nuisance. The king's highway is not to be used as a stable yard."

Without pursuing the subject further, I am of the opinion that, upon the clearest principles, the establishment of a public hack stand adjacent to the curb in front of private premises, without the consent of the abutter, is an invasion of his private rights in the street which the law will not countenance. Nor do I stop to discuss the further question whether a clear space of 30 feet in front of the door of a large hotel is a reasonable provision for access and ingress. On that subject there may be some doubt. Apart from that question, however, and solely upon the proposition that the ordinance constitutes an infraction of plaintiff's rights of property, I think that the order ap-

pealed from should be reversed, and the motion to continue the injunction pendente lite granted.

INGRAHAM, P. J. (dissenting). I concur with Mr. Justice SCOTT, as I think that, so far as the ordinance attempted to establish cab stands in the public streets, it was not authorized by the Legislature, and that such a use of the streets in front of and abutting on the private property involved an impairment of the abutting owner's easement in and right to the unobstructed use of the street in front of its property. If anything is now settled in this state, it is that an abutting owner has an easement in the street in front of his premises, of light, air, and access, which neither a private individual nor the public can appropriate without his consent and without compensation. This right has been enforced in a variety of cases, where it has been sought to establish in the street, without the consent of the abutting owners, any structure or use which appropriates this easement or interferes with the free and unrestricted right of the owners to use the street, and notably so in the cases involving the right of the elevated railroad companies with legislative authority to construct the elevated railroad structures in the streets of the city of New York, which appropriated this easement and interfered with the abutting owners' use of the street. The right of an abutting owner to the use of the street in front of his property was established in the case of Story v. N. Y. Elevated R. Co., 90 N. Y. 122, 43 Am. Rep. 146, and subsequently extended to a case where the city owned the fee of the street absolutely, and not in trust for the people of the state, in Abendroth v. Manhattan Ry. Co., 122 N. Y. 1, 25 N. E. 496, 11 L. R. A. 634, 19 Am. St. Rep. 461. In that case the court, after a review of the authorities both in this state and in other states, and in England, said:

"The judgments for damages which have been recovered and sustained against the elevated roads do not and cannot rest on the ground that the roads are public nuisances, for they were constructed pursuant to statutes; and besides, as before stated, a public nuisance does not create a private cause of action, unless a private right exists and is specially injured by it. The only remaining ground upon which they can and do stand is that by the common law the plaintiffs had private rights in the streets before the roads were built or authorized to be built. It is clear, we think, that these rights were not created by these statutes under which the corporations were organized, nor by the construction of the roads; nor do they exist by force of the judgment in Story's Case; but they existed anterior to the construction of the roads, and have simply been defined and protected by the decisions made in the litigations against these corporations. It being established that an abutting owner has property rights in the streets and that an action could have been maintained against the defendants for the recovery of the damages caused by their acts, had they been done without legislative authority, it becomes material to inquire whether such right of action is cut off because the road was constructed pursuant to such authority."

The court, after citing the provisions of the Constitution, art. 1, § 6, continued:

"The conclusion which we arrive at is that the erection and operation of the elevated roads in Pearl street immediately in front of the plaintiff's premises, in the manner and with the effect described in the findings of fact, was

144 N.Y.S.—32

a material impairment of the plaintiff's right of property, for which he is entitled to recover compensation for the damages inflicted."

We have thus established that the plaintiff has an interest in the street in front of its property, and neither the state nor the municipality can take away or impair that property right, except upon the payment of compensation, and this right has been recognized and enforced in a great variety of conditions that have existed and been created in the city of New York, in many of the cases cited and commented upon in the Abendroth Case. But I do not think the city was authorized to allow the street to be used for such a cab stand as it authorized by this ordinance. In Cohen v. Mayor, 113 N. Y. 532, 21 N. E. 700, 4 L. R. A. 406, 10 Am. St. Rep. 506, the city granted a permit to one Marks to keep his wagon in the street in front of his grocery store, and, in pursuance of that permit, Marks was in the habit of leaving his grocery wagon in the street when not in use, and a person passing through the street was killed thereby, and the administrators of the deceased brought an action against the city of New York, and a judgment for the plaintiffs was sustained by the Court of Appeals. Peckham, J., in delivering the opinion of the court, said:

"The storing of the wagon in the highway was a nuisance. The primary use of a highway is for the purpose of permitting the passing and repassing of the public, and it is entitled to the unobstructed and uninterrupted use of the entire width of the highway for that purpose, under temporary exceptions as to deposits for building purposes, and to load and unload wagons, and receive and take away property for or in the interest of the owner of the adjoining premises, which it is not now necessary to more specifically enumerate. * * * It is no answer to the charge of nuisance that, even with the obstruction in the highway, there is still room for two or more wagons to pass, nor that the obstruction itself is not a fixture. If it be primarily or even habitually in the highway, it is a nuisance. The highway may be a convenient place for the owner of the carriages to keep them in, but the law, looking to the convenience of the greater number, prohibits any such use of the public streets."

It was also expressly held in that case:

"The Legislature has expressly enacted that the city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway."

These provisions have been continued by the present charter of the city of New York. See Farley v. Mayor &c., 152 N. Y. 222, 46 N. E. 506, 57 Am. St. Rep. 511.

It thus appears that the city had no power to create such an obstruction, or to authorize the abutting owner to use the street for vehicles used in his business, even in front of his own property, and that any permit or authorization so to use the street was void, and such use was a public nuisance. The city was liable for any injury occasioned by the standing of a wagon in the street under such a permit. Under the ordinance in question the city has attempted to establish in front of the plaintiff's property a continuous line of motor vehicles, without the abutting owner's consent and notwithstanding his objection and protest. This is not a temporary use of the streets, but the ordinance contemplates that this use shall be continuous, and that there shall be con-

tinuously stationed these automobiles in the places specified. The ordinance permits that, as soon as an automobile is taken by a customer, its place shall be taken by another automobile; and so the ordinance contemplates the continued presence of vehicles, not the continuous movement of vehicles through the streets, but as stations for them to remain until they are hired, as obstructions in the street and to plaintiff's entry to his own premises, and that the number of automobiles specified shall always be continued there, although the mass of vehicles shall not at all times be the same. It seems to me that this was a direct violation of the legislative prohibition that:

"The city shall have no power to authorize the placing or continuing of any encroachments or obstructions upon any street or sidewalk, except the temporary occupation thereof during the erection or repair of a building on a lot opposite the highway."

The establishing of such a condition without the consent of the abutting owner was in itself an impairment of the abutting owner's easement in the street, and that easement could not be thus appropriated or impaired without the consent of the abutting owner. The ordinance, therefore, so far as it established these cab stands in front of and adjacent to private property abutting on the streets of the City of New York, was in excess of the legislative powers of the city authorities, and was an appropriation of private property without compensation, and was illegal and void.

I concur with Mr. Justice SCOTT that the order appealed from should be reversed, and the injunction continued.