GENESEE RECREATION CO. OF ROCHESTER et al. v. EDGERTON,
Mayor, et al.

(Supreme Court, Appellate Division, Fourth Department. March 31, 1916.)

1. THEATERS AND SHOWS ⬥3—LICENSES—REVOCATION.

The mayor of a municipality may revoke the license for a motion picture theater without notice to the licensee; the premises having been leased.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. ⬥3.]

2. THEATERS AND SHOWS ⬥3—LICENSE—REVOCATION—POWER OF MAYOR.

Under Rochester City Charter (Laws 1907, c. 755) § 47, imposing on the mayor the duty to see that the laws of the state and the ordinances of the city are executed and enforced, it is the duty of the mayor to revoke a license for a motion picture theater, where the latter was unsafe and its interior arrangement was not in compliance with the ordinance of the city.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. ⬥3.]

3. INJUNCTION ⬥151—TEMPORARY INJUNCTION—ISSUANCE OF WRIT.

Where the mayor of a city revoked a license for a motion picture theater on the ground that it was unsafe and that its interior arrangement was not in accordance with law, such matters should not be determined on affidavits for a temporary injunction to restrain revocation, which were disputed by official reports and affidavits.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 336; Dec. Dig. ⬥151.]

4. THEATERS AND SHOWS ⬥3—INDECENT PLACE—MORAL LESSON.

That a motion picture inculcates a moral lesson does not necessarily prevent it from being indecent.

[Ed. Note.—For other cases, see Theaters and Shows, Cent. Dig. § 3; Dec. Dig. ⬥3.]

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INJUNCTION ⬥⇒77(1)—LICENSES—REVOCATION.

The action of a mayor of a municipality in revoking the license for a motion picture theater, if reviewable at all, should be reviewed by direct proceeding, and not by collateral attack, as a suit for injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 146; Dec. Dig. ⬥⇒77(1).]

6. INJUNCTION ⬥⇒85(1)—SCOPE OF RELIEF—CRIMINAL LAW.

Equity will not interfere to prevent by injunction the enforcement of criminal law; consequently, where a motion picture theater license was revoked by the mayor in the enforcement of a criminal law, revocation will not be enjoined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 155; Dec. Dig. ⬥⇒85(1).]

Appeal from Special Term, Monroe County.

Action by the Genesee Recreation Company of Rochester, N. Y., and another, against Hiram H. Edgerton, individually and as Mayor of the City of Rochester, and others. From an order granting a temporary injunction pending the action, defendants appeal. Order reversed, and temporary injunction denied.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL, and DE ANGELIS, JJ.

B. B. Cunningham, of Rochester, for appellants.
P. De W. Oviatt, of Rochester, for respondents.

KRUSE, P. J. The action is for an injunction to restrain the mayor and his codefendants from interfering with a moving picture show. The appeal is from a temporary injunction order granting the relief pending the action.

[1] The plaintiff Blankmeyer attempted to show a photo play in the Genesee Theater in the city of Rochester. The theater was leased to him by the owner, the Genesee Recreation Company, his coplaintiff. The license for the theater was issued to the owner and has been revoked. The county judge held that the mayor was authorized to issue the license and to revoke the same without notice to the licensee, and with that view we are in accord; but he further held that there was no punishable violation of the laws of the state, nor of the building code of the city, and that the license was revoked upon inadequate and but partial information, thus reaching the conclusion that Blankmeyer's right to show under the license had not been affected, and accordingly granted the injunction order.

[2, 3] We are of the opinion that, if the mayor is right in his contention that the theater was unsafe and its interior arrangement not in compliance with the law and the ordinances of the city, he was not only justified in revoking the license, but it was the duty of the mayor and police department to intervene and prevent the use of the building; and this is so, irrespective of whether the revocation was effective or not. The license would not protect such unlawful use. True, the plaintiffs contend, and submit affidavits to support their contention, that the theater is safe and up to legal requirements; but these facts are disputed by the official reports to the Mayor and the

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

affidavits submitted in opposition to the application for the injunction order. This dispute upon the facts should not be determined in advance, upon these conflicting affidavits, adversely to the mayor, upon whom the duty is imposed by law to see that the laws of the state and the ordinances of the city are executed and enforced. Charter of the City of Rochester (chapter 755, Laws of 1907) section 47.

[4] It is contended that the revocation was arbitrary, tyrannical, and unreasonable, and based upon false information; that, while the license was revoked ostensibly because the building was unsafe, it was in fact safe, and that the real reason for the revocation was the unfounded contention by the mayor that the picture play was indecent. Blankmeyer swears in his moving affidavit that the play inculcates a great moral lesson, has received the support of the highest medical and sociological men of the country, and that there is an overwhelming demand by the citizens of the city to see the play.

Even though the picture inculcates such a lesson, it does not necessarily follow that the exhibition may not offend against public decency. However desirable it may be to disseminate such knowledge, it may well be doubted that it should be done by means of a picture show in a public playhouse. But for the purposes of this appeal we may assume that the character of the play is unobjectionable, since whatever motive may have prompted the action of the mayor in revoking the license, if the theater was in fact unsafe and deficient, so as to make its use unlawful, it should not be permitted to be used in violation of the law, and the overwhelming demand to see the picture show, if it actually exists, all the more justifies the intervention by the mayor and the police department, because the crowded condition of the theater would necessarily enhance the danger.

[5] If an actionable wrong has been committed against the plaintiffs, they have an adequate remedy at law. The action of the mayor in revoking the license, if reviewable at all, should be reviewed by a direct proceeding, and not by collateral attack in such an action as this. People ex rel. Lodes v. Dept. of Health, 189 N. Y. 187, 82 N. E. 187, 13 L. R. A. (N. S.) 894; Southern Leasing Co. v. Ludwig, 217 N. Y. 100, 111 N. E. 470.

[6] It is well settled that equity will not interfere to prevent the enforcement of the criminal law (Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. [N. S.] 678, 111 Am. St. Rep. 759, 5 Ann. Cas. 480), and if the mayor is right in his contention this injunction is of that nature. We think this case is like that of Eden Musee Co. v. Bingham, 125 App. Div. 780, 110 N. Y. Supp. 210, and cases there cited, where an injunction was refused, and that should be done here

The order should be reversed, with $10 costs and disbursements, and the application for a temporary injunction denied. All concur.