ANNA FARRELL and Another, Plaintiffs, *v.* CITY OF SYRACUSE and Others, Defendants.

Supreme Court, Onondaga County, February 22, 1930.

*Carlton* , plaintiffs.

*H. Dua* , *:tion Counsel*, for the defendants.

*Melvin* ( mdaga Hotel Company, *amicus curiœ*.

CHENEY, 'g this action to obtain a permanent
injunction : endants, the city of Syracuse and its
administrat: m any wise doing or attempting or
causing to l 'mance, conduct or act in or for or
about the c t any of the matters set forth in
General Ord; ed June 16, 1924, by the common
council of th use setting aside certain stands for
taxicabs, and daring said ordinance null and void;
and has moved ior a temporary injunction pending the determination of the action.

It appears that on March 31, 1924, the common council of the city of Syracuse passed an ordinance regulating generally the taxicab and hack business in that city, providing for licenses for operators and drivers, prescribing rates of fare and many other requirements to be conformed with by those engaged in the taxicab business, as defined by the act, and providing, among other things (§ 13): " The Commissioner of Public Safety may designate and establish public stands upon the streets or portions of the streets, alleys or public places of the City of Syracuse within which it shall be lawful to leave standing such number of taxicabs as the said Commissioner of Public Safety may designate. Said stands shall be under the direct supervision of the Commissioner of Public Safety and subject to any reasonable rules and regulations which he may promulgate."

It would appear that the commissioner of public safety never acted under this permissive portion of the ordinance, and that there are not any public taxicab stands which can be used by those engaged in that business in said city. Instead, the common council itself acted and on the 16th day of June, 1924, passed another so-called ordinance reading partly as follows:

" Cab and taxicab stands for taxicabs each are hereby established and designated upon the streets of the City and designated as the exclusive stands of the persons, firms, parties and corporations whose names follow each stand designated respectively, as follows: Stand No. 1. For two cars: to be situated on the northerly side of Harrison Street fifty feet westerly from the corner of Warren and Harrison Streets, as laid out and designated by the Department of Public Safety, to William A. Adams Taxi Co."

Then follows a description of nineteen other stands each allotting

a portion of the public highways to a certain designated taxicab operator in similar language. The ordinance then continues:

" Be it further ordained, that the aforesaid persons, firms or corporations so designated shall have the exclusive right to use and occupy the same, when duly licensed to and including December 31st following and that the Commissioner of Public Safety shall issue to said purchaser a proper and sufficient license to occupy the same during said period. Be it ordained that cabs or taxicabs shall not be stopped or left standing upon any streets in the City for any purpose whatsoever, except for the purpose of taking on or letting off passengers, unless in one of such stands."

Said ordinance has been amended numerous times since by adding thereto other and different locations on the streets to different firms and individuals, but no stand has been designated for the use of all operators generally.

Plaintiff Anna Farrell is engaged in the public taxicab business in the city of Syracuse, and has complied in all respects with the ordinance of March 31, 1924, and is in possession of the necessary licenses required by said ordinance permitting her to engage in that business, and the plaintiff Robert Farrell is one of the drivers employed by said Anna Farrell in the operation of her public taxicab business and has been duly licensed by the city of Syracuse as such driver pursuant to the provisions of the ordinance of March 31, 1924. These plaintiffs have been interfered with by the police and other authorities of the city and prevented from occupying any of the stands so set apart by the ordinance of June 16, 1924, for designated owners of taxicabs, and from carrying on business as such therein, and are threatened with arrest and imprisonment if they do not desist from occupying any of the taxicab stands so set apart by said ordinance for the exclusive use of the taxicab owners therein named. Plaintiffs claim that this ordinance of the city setting apart portions of the public highway for the exclusive use of particular persons for the carrying on of private business therein is unlawful and void, and that they are entitled to maintain this action against the authorities of the city to restrain the enforcement of this void ordinance.

The general rule is that an injunction will not be granted to stay a criminal or quasi criminal proceeding even when the claim is made that the prosecution is under a void statute or municipal ordinance, the rule being that the invalidity of the law or ordinance is a legal question which should first be determined in an action at law, and that an adequate remedy at law be available. (*Wallack* v. *Society Juvenile Delinquents*, 67 N. Y. 23; *Delaney* v. *Flood*, 183 id. 323; *Genesee Recreation Co.* v. *Edgerton*, 172 App. Div.

464; *Lee* v. *O'Malley*, 140 id. 595.) This rule has also been applied in cases where the prosecution has not yet been commenced, but is threatened merely. (*Eden Musee American Co., Ltd.,* v. *Bingham,* 125 App. Div. 780; *Cohen* v. *Dept. of Health of New York,* 61 Misc. 124; *Moore* v. *Owen,* 58 id. 332.)

There seems to be an exception to this general rule, which has been applied in cases where the criminal prosecution has not been actually begun but is threatened, that equity will interfere by injunction and prevent municipal authorities from enforcing an invalid municipal ordinance, the enforcement of which would result in great injury to the plaintiff's rights. (*United Traction Co.* v. *Watervliet,* 35 Misc. 392; *Buffalo Fertilizer Co.* v. *Cheektowaga,* 61 id. 404.) It is under this exception to the general rule that the plaintiffs seek to maintain this action, as their claim is that this threatened action on the part of the municipal authorities seriously interferes with their right to carry on the taxicab business in the city of Syracuse.

The question of the invalidity of this ordinance was up before, and while it was not then determined as there were other fatal objections to the proceeding, a serious doubt was then expressed as to its validity. Since that determination ample time has been afforded to the municipal authorities to correct by amendment any deficiencies which it would seem were inherent in the ordinance, but they have not seen fit to avail themselves of the opportunity afforded, and it would, therefore, appear that an occasion is presented of an exceptional nature, and that the court should not refuse to pass upon the principal question involved.

The rule that the business of a public hackman is so affected with a public interest as to be subject to governmental regulation is too well established to require discussion. (See *Yellow Taxicab Co.* v. *Gaynor,* 82 Misc. 95, and the cases therein collated and cited.) That any ordinance for the purpose of such regulation, in so far as the city of Syracuse is concerned, is within the power of the common council thereof to enact would seem unquestioned. Chapter 247 of the Laws of 1913 added a new article to the General City Law, section 19 of which now provides: " Every city is granted power to regulate, manage and control its property and local affairs and is granted all the rights, privileges and jurisdiction necessary and proper for carrying such power into execution." Section 20, subdivision 13-b, of the same statute (added by Laws of 1913, chap. 247) states: " Every city is empowered to maintain order, enforce the laws, protect property and preserve and care for the safety, health, comfort and general welfare of the inhabitants of the city and visitors thereto; and for any of said purposes to regulate and license

occupations and businesses." By the Second Class Cities Law (§ 30), "The legislative power of the city is vested in the common council thereof, and it has authority to enact ordinances, not inconsistent with law, for the government of the city and the management of its business, for the preservation of good order, peace and health, for the safety and welfare of its inhabitants and the protection and security of their property." By section 15, subdivision 1, of the General Highway Traffic Law (as it read at the time of the passage of this ordinance, now Vehicle and Traffic Law, section 87, subdivision 1) the common council of a city was authorized to designate by ordinance such cab or taxicab stands in the public streets as are required for the safety and convenience of the citizens and inhabitants of the city.

The contention made here is that the common council by its ordinance of March 31, 1924, has regulated the taxicab and hack business in the city of Syracuse, and has provided the machinery by which public hack stands upon the streets may be set apart, which shall be available to the use of all duly licensed operators, and to that ordinance no objection is taken. Plaintiff's position is that the ordinance of June 16, 1924, which is under attack here, is not an ordinance which lawfully regulates the taxicab and hack business, but that its whole effect is to set apart certain specified portions of the highways for the exclusive use of certain persons for the purpose of carrying on therein a private business for private gains, and excluding the public generally from the use of such portions of the highways for all the legitimate uses for which such highways are established.

That it is not within the power of the municipal authorities of any city to grant to a private individual the use of the public streets for a private purpose would seem to be too well settled to admit of argument. It was said in *People ex rel. Hofeller* v. *Buck* (193 App. Div. 262; affd., 230 N. Y. 608): "It is elementary law that the public is entitled to the free and unobstructed use of city streets and that any obstruction of such streets for private use interferes with the public right, constitutes a nuisance and may be removed at the suit of any interested citizen. * * * It is conceded that a municipality has no right or authority to grant a license for the use of the public streets in an unlawful and illegal way, and that if the newsstands in question are unlawful and constitute obstructions it makes no difference whether or not they were authorized by the city of Buffalo or how long the city has permitted them to be used, for a city holds the streets for the public use of all the people." The obstruction in that case was a newsstand. To the same effect is *Matter of Kahabka* v. *Schwab*

(205 App. Div. 368; affd., 236 N. Y. 595), wherein the obstruction was a gasoline pump, and wherein an exception was attempted to be engrafted upon the general rule, in view of the fact that the pump was intended to supply gasoline to the automobiles of the general public using the highway for the purpose of transportation. The court in rejecting this plea said: " But the obstruction of a gasoline pump is not insignificant; it rests not only in the structure itself but in the lines of vehicles frequently and sometimes almost continuously waiting for service."

The municipal authorities seek to justify this ordinance by the claim that it is authorized by their undoubted power to regulate the taxicab and hack business, and that for the convenience of the public in the use of the streets it is necessary that hacks and cabs be stationed at convenient places waiting for business. We have already alluded to the fact that this ordinance can hardly be looked upon as one for the regulation of the taxicab and hack business, as its sole purpose is to grant to different individuals the exclusive right to the use of certain portions of the public streets for the purpose of carrying on their private business. Certain cases have been cited as authorities to uphold the contention of the municipality. The only case in New York is *City of New York* v. *Reesing* (77 App. Div. 417). A critical examination of this case will show that it will not bear out the claim that the ordinance in question here is a lawful one. All that was decided in that case was whether the defendants were liable to pay a fine by reason of the violation of a city ordinance. It appears that for many years in the city of New York, all cabs, carriages and vehicles kept for hire had been practically divided into two classes, known and designated as public hacks and special hacks. The public hacks were those which used the designated public hack stands while waiting for employment, while the special hacks did not use the public hack stands, but stood in livery stables or in front of certain premises such as hotels, etc., by virtue of a special permit from the owners of the premises abutting upon the highway at that point, and were restricted to the carrying of passengers from the stables or the premises in front of which they stood. The ordinances of the city prescribed a different license fee for each vehicle used in the business, and for those using the special or private stands imposed a license fee of twenty-five dollars for each vehicle so used, and required a license therefor to be obtained. Defendants obtained the written consent of the proprietors of the Hotel Imperial to keep cabs standing in front of the hotel, and obtained from the city the general cab license, but refused to obtain the special license to stand in the private stand or to pay

the fee therefor. In an action by the city, judgment was had for the amount of the fine imposed by the ordinance, and that determination was before the court for review. All that the court held was that in view of the existing situation in the city of New York, the municipality was justified in dividing the cabs into different classes, depending upon whether they used the public stands, the stables or the private stands and to impose different license fees and requirements as to each, and expressly declined to pass upon the right of a hotel proprietor to maintain a cab service in the street in front of his premises, and also said that a case was not presented of an ordinance authorizing the establishment of a hack in front of private premises without the consent of the owner or the lessee.

It is interesting to note that since the decision in the *Reesing* case, the city of New York has revised its ordinances governing the taxicab business in which it has established numerous public hack stands, including in many instances the space covered by the private stands established by agreement with the property owners, which the city refused to longer recognize, and that ordinance was upheld in *Yellow Taxicab Co.* v. *Gaynor* (82 Misc. 94; affd., 159 App. Div. 888); and that the Legislature of the State has passed a statute (Penal Law, § 444) whereby the making of any agreement by an owner or occupant for a consideration to him whereby the right is attempted to be granted to use any portion of any public highway in any municipality for the purpose of permitting any vehicle to stand while waiting passengers for hire or as a private hack stand, is made a misdemeanor.

It has been definitely decided that, at least in such cases where the fee of the street is in the municipality, it is within the power of the city authorities to provide for public hack stands in the city streets and the length of time that hackmen may stand thereat, provided that such use shall not unreasonably interfere with ingress to and egress from abutting property, and this without the consent and even against the protest of the abutting owner. (*Waldorf-Astoria Hotel Co.* v. *City of New York*, 212 N. Y. 97.) But it will be noticed that this authority is for the establishment of a *public* hack stand, that is, a stand for the use generally by all duly licensed hackmen, and falls far short of holding that the city may establish hack stands in the public streets, and set them apart to the exclusive use of some particularly favored hackman, as is the case with the ordinance here.

It is a cardinal principle in the determination of the legality of municipal regulatory ordinances that they must be reasonable and not an interference with private legal rights. One of the

tests to be applied in determining the reasonableness of a regulation is that it must operate with substantial equality and uniformity on all persons and classes similarly situated. (*Buffalo Fertilizer Co.* v. *Cheektowaga*, 61 Misc. 404; *People* v. *Levine*, 119 id. 787; *United Traction Co.* v. *Watervliet*, 35 id. 392; *Star Co.* v. *Brush*, 103 id. 631.) The effect of this ordinance is that it shall be lawful for one hackman to stand and carry on his business at a particular place in the public street, but it shall be unlawful for every other person, although possessing the same qualifications, to carry on the same kind of business at that place. There would seem to be no question that this ordinance is highly discriminatory.

My attention has been called to a line of cases, decided in other States, wherein it was held that it was within the regulatory power of the municipal authorities to prescribe the particular place in a hackstand used in connection with railroad depots the vehicles of each particular hackman should stand. (*City of Ottawa* v. *Bodley*, 67 Kans. 178; 72 Pac. 545; *City of St. Paul* v. *Smith*, 27 Minn. 364; 7 N. W. 734; *Veneman* v. *Jones*, 118 Ind. 41; 20 N. E. 644; *City Cab, Carriage & Transfer Co.* v. *Hayden*, 73 Wash. 24.) But in all those cases provision was made in the hackstand for all hackmen, but in order to prevent confusion and strife, the particular place of each therein was regulated. Indeed there are many cases which hold that it is illegal to prevent all hackmen from plying their trade in a semi-public place, such as a railroad station, and that the prohibition may go so far as to prevent the railroad company from granting to one hackman the right to use exclusively a stand upon the private property of the railroad. None of those cases is a New York case. (*City of Cincinnati* v. *Cook*, 107 Ohio St. 223; 140 N. E. 655; *Pennsylvania Co.* v. *City of Chicago*, 181 Ill. 289; *Montana Union Ry.* v. *Langlois*, [Mont.] 24 Pac. 209.) While there are some broad statements in some of the opinions, none of these cases can be construed as an authority for the validity of an ordinance such as the one in question.

I am convinced that the ordinance in question is beyond the power of the municipal authorities to enact, and is illegal, null and void. Consequently the city should be restrained from attempting to enforce it. This applies particularly to the situation of the plaintiff Anna Farrell, and in her case a temporary injunction to that effect may issue. It appears that in the case of Robert Farrell, a prosecution for the alleged violation of this ordinance has been begun. The continuance of that prosecution will not be restrained by the court, and the order to be drawn will expressly exclude it.

For the information of other hackmen, it would be well to say

that this case grants a temporary injunction in so far as Anna Farrell is concerned only, and will afford no protection to any other person who may seek to rush in and occupy any of the stands mentioned in the ordinance. If it is sustained by the final judgment herein, it will mean that there are no legally designated hackstands in the city of Syracuse, and that there is no place upon the streets where hacks can legally stand and ply their trade, and any one who attempts to do so, acts at his peril.

Prepare order accordingly.