In the Matter of the Application of the AMERICAN COMMITTEE ON MATERNAL WELFARE, INC., and SAM CITRON, Petitioners, for an Order Pursuant to Article 78 of the Civil Practice Act, against THOMAS J. MANGAN and Others, Constituting the Regents of the University of the State of New York, Respondents.

Third Department, July 11, 1939.

*Ellis J. Staley* [*Thomas T. Heney* of counsel], for the petitioners.

*Ernest E. Cole* [*Charles A. Brind, Jr.,* of counsel], for the respondents.

SCHENCK, J. Application for licensing of the motion picture film " The Birth of a Baby " was heretofore filed by Sam Citron, pursuant to the provisions of the Education Law. The Director of the Motion Picture Division of the State Education Department and the Commissioner of Education denied the application, giving as their reason that the film was "indecent," "immoral," and "would tend to corrupt morals " within the meaning of section 1082 of the Education Law. In January, 1938, the American Committee on Maternal Welfare, Inc., appealed to the Board of Regents. After the picture had been screened and reviewed by the Board of Regents, and after arguments in favor of licensing the picture had been had, the Board of Regents sustained the action of the Director, and while offering to issue an educational permit for its exhibition as an

educational film, pursuant to the provisions of the Education Law, it refused to license it to be shown in places of amusement. Apparently the applicant desired to have public showing of this film in motion picture theatres generally, rather than to exhibit it for clinical purposes.

Undoubtedly, this picture may have its scientific value. It is not inherently indecent in the ordinary accepted sense of the word, but it becomes indecent when presented in places of amusement. For clinical purposes the picture may be shown under a special permit authorizing the showing of educational pictures of this character under certain restrictions. (Education Law, § 1083.) But a picture depicting the actual birth of a child becomes indecent when presented to patrons of places of public entertainment.

The character of the audience frequenting places of public entertainment has been considered by this court in *Pathe Exchange, Inc.,* v. *Cobb* (202 App. Div. 450), where it is said (at p. 457): " The ' show ' business is clearly different from the newspaper business and those who engage in the show business are none too likely to confine their productions to the things which are just, pure and of good report; but in order to continue to attract patrons, many would cast discretion and self-control to the winds, without restraint, social or moral. There are those who would give unrestrained rein to passion. If the thing be true and real, they would reveal it in its utter nakedness. They appreciate the business advantage of depicting the evil and voluptuous thing with the poisonous charm. Certainly there are some things which are happening in actual life today which should not have pictorial representation in such places of amusement as are regulated by this legislation, places where the audiences are not confined to men alone or women alone and where children are particularly attracted."

Again, in *Genesee Recreation Co.* v. *Edgerton* (172 App. Div. 464), where the court said (at p. 466):

" Blankmeyer swears in his moving affidavit that the play inculcates a great moral lesson, has received the support of the highest medical and sociological men of the country, and that there is an overwhelming demand by the citizens of the city to see the play.

" Even though the picture inculcates such a lesson, it does not necessarily follow that the exhibition may not offend against public decency. However desirable it may be to disseminate such knowledge, it may well be doubted that it should be done by means of a picture show in a public playhouse."

It is true that times have changed since those cases were decided, nevertheless, the exhibition of this picture in a place of public

amusement for the entertainment of an audience composed of adults and children would serve no useful purpose, although it may appeal to the morbid and curious.

Aside from all other considerations, this court should not substitute its judgment for the judgment of the respondents, constituting the Regents of the State. It nowhere appears that the action of the Director of the Motion Picture Division, the action of the Commissioner of Education, or the action of the respondents, constituting the Regents, was arbitrary, unlawful or capricious. The proceedings were properly had and the picture has been passed upon by those charged with the duty of determining whether or not a license should issue. It is a matter of opinion whether this picture is decent or indecent, and where there is room for an honest opinion, this court should not interfere. The respondents were given powers in respect of licensing motion picture films. Their duties require them to pass upon the film and determine whether or not it should be exhibited in places of amusement. The necessary proceedings were taken, evidence was presented, and arguments heard. The respondents arrived at a determination and in the absence of evidence of arbitrary or unlawful action, this court may not substitute its judgment for that of the body clothed with authority to make a determination. (*Niagara Falls Power Co.* v. *Water Power & Control Commission*, 267 N. Y. 265.) Judge FINCH, writing the opinion for the court, in which all concur, has this to say (at p. 278): " As there was evidence before the Commission bearing upon the reasonable value or rental value for the use of this water, neither the Appellate Division nor this court has any power to reconsider the question. No doubt much administrative law has grown up in this State and in this country in response to the development of the public utility resources, but, unless these administrative agencies act arbitrarily and beyond their powers, the courts should not interfere. We have no special knowledge which enables us to deal with these matters. On the other hand, the Commission is a fact finding body of presumed technical qualifications. The Power Commission has been intrusted by the Legislature to deal with these specialties and as long as they act in accordance with the due administration of law by affording a hearing, taking evidence and giving their judgment or award, we cannot, nor must the Appellate Division, interfere with their conclusion."

The only real evidence in this case is the picture itself and if from that evidence there is a reasonable basis for the determination of the respondents and the determination is not arbitrary or capricious, the court will not disturb the finding. (*Matter of Eureka*

*Productions, Inc.,* v. *Byrne,* 252 App. Div. 355; *Matter of Foy Productions, Ltd.,* v. *Graves,* 253 id. 475; *Message Photo-Play Co., Inc.,* v. *Bell,* 179 id. 13; *Matter of Public Welfare Pictures Corp.* v. *Lord,* 224 id. 311.)

In the *Lord* case, WHITMYER, J., writes: " Here, it is not alleged and it does not appear that the examining officials acted in bad faith, or capriciously, or arbitrarily, or without reasonable grounds for apprehending that public morality, decency, or welfare would be endangered. * * * There is only a difference of opinion as to the character of the picture. That is a question of fact, the determination of which has been committed to the Education Department. There is evidence to support its determination. And it is not a case where, upon all the evidence, there was such a preponderance the other way that the verdict of a jury to the same effect * * * would be set aside by the court as against the weight of evidence."

The Regents have determined that this picture should not be shown to the public generally, and while opinions may differ as to whether the picture is decent or indecent, the determination should not be disturbed and the proceeding should be dismissed.

CRAPSER and BLISS, JJ., concur; HILL, P. J., and HEFFERNAN, J., dissent, in the following memorandum: We favor an annulment of the determination. The film " Birth of a Baby " will give vital and needed information to pregnant women, many of whom fail to seek early and necessary advice. The authors and actors treated the theme in a clean, dignified and reverent manner. To limit the exhibition to educational and clinical groups will defeat the worthy purpose of the sponsors of the film.

Determination confirmed, with fifty dollars costs and disbursements.