THE PEOPLE OF THE STATE OF NEW YORK, on the Complaint of DAVID R. WALLACE, Complainant, v. ROBERT T. OESTRIECHER, Defendant.

City Magistrates' Court of New York, Borough of Brooklyn, Tenth District, January 13, 1940

*Daniel P. A. Sweeney* and *Louis L. Stutman, Legal Bureau, Police Department,* for the People.

*Shepard Broad,* for the defendant.

BROMBERGER, C. M. Defendant is here charged by a police officer with violation of section 436–2.0 of the Administrative Code of the City of New York. Paragraph 3 of subdivision c of that section reads as follows: " A taxicab, coach, horse drawn cab or sightseeing bus shall operate for hire within the city of New York only if the owner shall first have obtained an appropriate license from the hack bureau."

The People's case establishes that the alleged violation of the above-mentioned section occurred on August 16, 1939, at nine-fifteen A. M. in the borough of Brooklyn, city of New York. The defendant was there operating a motor bus engaged in carrying a group of approximately thirty children to the World's Fair, pursuant to a charter contract between the Joseph P. Day Corporation, operator of a children's camp, and the owner of the bus which the defendant was then driving. The defendant is duly licensed as a chauffeur by the State of New York and as a city zone bus driver by the New York city police department. The vehicle was duly licensed as a school bus, but has not been licensed by the hack bureau as a sight-seeing bus. It is the lack of this latter license which forms the gist of the complaint in the present prosecution.

Upon the conclusion of the People's evidence the defendant moved to dismiss the complaint on the ground that the People had failed to establish a *prima facie* case under section 436–2.0 of the Administrative Code, and on the further grounds that (1) the section involved is in contravention of section 54 of the Vehicle and Traffic Law, and (2) in conflict with section 61 of the Public Service Law.

In support of its motion the defendant urges that the bus which he was operating was not, in the ordinary sense of the term, a sight-

seeing bus. That a distinction may be drawn between the usual sight-seeing bus and a chartered bus must be conceded. Were it requisite for the determination of this case, we might consider more fully the many points of similarity between the two types of vehicles as well as their differences. Such detailed determination becomes unnecessary in the instant situation by reason of the definitional language of the section under which defendant is charged. " ' Sight-seeing bus ' shall mean a motor vehicle designed to comfortably seat and carry eight or more passengers operating for hire from a fixed point in the city of New York to a place or places of interest or amusement, *and shall also include a vehicle, designed as aforesaid, which by an oral or written contract is let or hired, or otherwise engaged for its exclusive use for a specific or a special trip or excursion from a starting point within the city of New York.*" (N. Y. City Admin. Code, § 436–2.0, subd. b, ¶ 2, cl. p.)

Whatever may be the usual or ordinary signification of the term " sight-seeing " bus, it is clear that for the purposes of the section in question it is intended to comprehend and by its language specifically includes that which we usually designate as a " chartered " bus.

Defendant has cited BAYES, Ch. J., in *People* v. *Central Greyhound Lines* (173 Misc. 487), distinguishing between the ordinary sight-seeing and chartered bus; but, in the same case, Mr. Justice BAYES ruled that, while the language of the section nowhere makes a specific reference to a chartered bus, it must be admitted " that the language of clause (p) of paragraph 2 of subdivision b in defining a sight seeing bus * * * is * * * broad enough to include " chartered buses. The basis of the decision in that case was not that the section failed to include chartered buses (for it clearly does), but that the language must be interpreted as applicable only to trips by such buses wholly within the city limits. Since the terminus of the trip in question was one hundred miles distant from the city of New York, the judgment was accordingly reversed and the complaint dismissed.

The defendant also urges that even if the section of the Administrative Code be applicable to the facts here involved, nevertheless the legislation must be held void as in contravention of section 54 of the Vehicle and Traffic Law. That section forbids the requirement of licenses or permits for the use of public highways by local ordinance with the exception, however, that " the power given to local authorities to license and regulate vehicles offered to the public for hire, and processions, assemblages or parades in the streets or public places, and all ordinances, rules and regulations which may have been or which may be enacted in pursuance of such powers shall remain in full force and effect."

It is clearly a valid exercise of the police power for the city of New York to license and regulate the operation of sight-seeing and chartered buses (*Matter of Rudack* v. *Valentine*, 163 Misc. 326, 330; affd., 274 N. Y. 615), and this power is specifically reserved to it by the proviso of section 54 of the Vehicle and Traffic Law.

It does not follow, of course, that all enactments imposing charges upon owners of motor vehicles for the use of the streets are valid. (*City of Buffalo* v. *Lewis*, 192 N. Y. 193; *United Taxicab Bd. of Trade, Inc.*, v. *City of New York*, 150 Misc. 636.) The distinction drawn by the courts is between a measure imposed solely for the purposes of revenue and one which is enacted for regulatory purposes. (3 McQuillan, Municipal Corporations, 461.) In the instant case it would seem beyond question that the license fee of twenty dollars for each " sight-seeing " bus is a regulatory rather than a tax measure, designed substantially to cover the cost to the municipality involved in inspectional and regulatory service, and is, therefore, a valid exercise of the powers of the municipality. Were there any doubt on this score it would be completely dispelled by reference to the preamble to the legislation which is at the foundation of section 436–2.0 of the Administrative Code, which specifically states that " some form of mild regulation " is desirable for the sight-seeing business.

The defendant also urges that the section is in contravention of section 61 of the Public Service Law. While by that section the transit commission is vested with exclusive authority to control the operation of omnibuses, it cannot be said that the section must be read to repeal by implication the general regulatory and licensing powers of the municipality. Such an intent cannot be superimposed upon the language of the statute, and it must be apparent that no such result was contemplated by the Legislature. (*Yellow Taxicab Co.* v. *Gaynor*, 82 Misc. 94; affd., *sub nom. Hotel Astor* v. *City of New York*, 159 App. Div. 888.)

The motion to dismiss the complaint is, therefore, denied.